AMERICAN BANK & TRUST COMPANY, BATON ROUGE, LOUISIANA

v.

UNITED STATES of America and District Director of Internal Revenue.

Civ. A. No. 2352.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Jan. 3, 1963.

Alvin B. Rubin, Sanders, Miller, Downing, Rubin & Kean, Baton Rouge, La., for plaintiff.

Louis F. Oberdorfer, Asst. Atty. Gen., Edward S. Smith, Myron C. Baum, George A. Hrdlicka, Attys., Dept. of Justice, Washington, D. C., Louis C. LaCour, U. S. Atty., Eastern District of Louisiana, Peter E. Duffy, Asst. U. S. Atty., Eastern District of Louisiana, for defendant.

WEST, District Judge.

REASONS FOR JUDGMENT

This case involves a claim by plaintiff, American Bank & Trust Company of Baton Rouge, Louisiana, against the United States of America, District Director of Internal Revenue, for refund of income taxes paid by it for the years 1952 and 1953. The case was submitted to the Court on an agreed stipulation of fact. These facts are as follows: For the taxable year 1952, the American Bank & Trust Company, hereinafter referred to as "the Bank", paid Federal income taxes in the amount of $33,975.87. For the year 1953 the Bank paid Federal income taxes in the amount of $46,871.76. In the years 1954 and 1955 the Bank had net operating losses of $122,741.47, and $131,139.70, respectively. Also, during the years 1952 and 1953, the Bank received non-taxable interest payments totaling $173,329.96 and $147,648.81, respectively. Since these two items of interest were completely tax exempt at the time, they were not, of course, originally included as a part of the taxpayer's taxable income for the years 1952 and 1953, and consequently, no Federal income taxes were paid thereon.

At the time this action was commenced, Section 172 of the Internal Revenue Code of 1954 permitted the taxpayer who had

a net operating loss in one year to carry back that loss and under certain circumstances, to apply it against taxable income for each of the two preceding taxable years. There were also provisions for carry forward of losses, but this provision is not involved in this litigation. After the losses in 1954 and 1955 were incurred, the Bank timely filed claims for refund, seeking to carry back its 1954 loss to 1952 and its 1955 loss to 1953. When this claim for refund was made, before applying the 1954 loss against the 1952 income on which income taxes had been paid, the Commissioner of Internal Revenue reduced the amount of the 1954 operating loss by the amount of tax-exempt interest received by the Bank in the year 1952, and also reduced the amount of the operating loss of 1955 by the amount of the tax-exempt interest received by the Bank in the year 1953. This was done pursuant to the provisions of subsections (c) and (d) of Section 122 of the Internal Revenue Code of 1939. While the Bank was claiming, as a refund, for the year 1952 the sum of $28,457.89, this computation by the Commissioner reduced the amount of the refund to $5,517.98, which was paid to the Bank on March 24, 1959. Also, while the Bank was claiming a refund in the amount of $46,871.76 for the year 1953, these computations by the Commissioner resulted in no net operating loss deduction allowable for the year 1953, and accordingly, the Bank's claim for refund for that year was disallowed in full.

If, instead of applying subsections (c) and (d) of Section 122 of the Internal Revenue Code of 1939 when making these computations, the Commissioner had applied the provisions of Section 172 of the Internal Revenue Code of 1954, the result sought by the Bank would have been reached. It is the contention of the Bank that since the operating losses involved occurred in the years 1954 and 1955, after the adoption of the Revenue Code of 1954, even though these operating losses must, pursuant to the provisions of the Revenue Code of 1954, be carried back to the years 1952 and 1953,

the provisions of the Internal Revenue Code of 1954 must apply both as to the computation of the amount of the carry back involved for each of the two loss years as well as to any computations in connection with the application of these losses to the taxable income for the prior years of 1952 and 1953 to which these losses must be carried. On the other hand, it is the contention of the respondent that while the amount of the allowable carry back resulting from the operating losses of 1954 and 1955 must be governed and computed in accordance with the provisions of the Internal Revenue Code of 1954, after these losses are thus computed and carried back to years prior to the adoption of the Internal Revenue Code of 1954, the application of these losses against the taxable income for those prior years, and any computations in connection therewith, must be governed by the provisions of the Internal Revenue Code then in force, namely, the Internal Revenue Code of 1939. It was on this latter theory that the Commissioner of Internal Revenue made the determination objected to here by the plaintiff Bank.

Able counsel for both the plaintiff and the respondent have furnished the Court with extensive and exhaustive briefs in support of their respective positions. After careful study of these briefs, and the applicable laws and jurisprudence, this Court concludes that the computations made by the Commissioner of Internal Revenue are not erroneous and must be sustained. It is conceded by both parties to this litigation that if, under the circumstances, the provisions of the Internal Revenue Code of 1939 are applicable, then the computations and conclusion reached by the Commissioner of Internal Revenue are correct. On the other hand, it is also conceded by the Government that if the provisions of the Internal Revenue Code of 1954 are to be applied in computing the net amount of taxes due for the year 1952 and 1953 after applying the net operating losses carried back from the years 1954 and 1955, then, in that event, the position

contended for by the plaintiff Bank would have to be sustained.

A close study of the provisions of the Internal Revenue Code of 1954 makes it very clear that every effort was made to cover every conceivable type of situation involving carry backs and carry forwards during the transition period between the effective date of the Internal Revenue Code of 1939 and the effective date of the Internal Revenue Code of 1954. But despite the best efforts of the drafters of such complicated legislation, ambiguities are bound to occur and differences of opinion are sure to exist among learned counsel when it comes to applying the provisions of this type of legislation to specific instances.

After thorough study, this Court reaches a similar conclusion to that reached in Kent v. Commissioner, 35 T. C. 30, wherein the Court stated as follows:

"We agree with petitioners that computation of the amount of the net operating loss for 1955 which may be carried back to 1953 must be governed by Section 172 of the 1954 Code, Reo Motors v. Commissioner, 338 U.S. 442 [70 S.Ct. 283, 94 L.Ed. 245] (1950); Cambria Collieries Co., 10 T.C. 1172 (1948); but in our opinion both the allowance of the net operating loss deduction for the year 1953 and computation of the amount thereof are governed by the law applicable to the year 1953, being Sections 23(s) and 122 of the 1939 Code, unless there is something in the provisions of the 1954 Code which would specifically dictate otherwise. We have found nothing in the 1954 Code provisions which state or even implies that the net operating loss deduction or computation of the amount thereof for years beginning prior to December 31, 1953 should be governed by the 1954 Code."

This holding in Kent was also followed and adopted in Taft v. Commissioner, 1961 P–H T.C. Memorandum Decisions, ¶61,230.

Not only is there nothing found in the Internal Revenue Code of 1954 which would indicate contrary to the holding in Kent, but there is a provision therein which seems to be completely unambiguous and which expresses the clear intention as to which Revenue Code should apply. Section 172(e) states:

"In determining the amount of any net operating loss carryback or carryover to any taxable year, the necessary computations involving any other taxable year shall be made under the law applicable to such other taxable year. The preceding sentence shall apply with respect to all taxable years, whether they begin before, on, or after January 1, 1954."

In support of its position, the plaintiff Bank cites the very recent case of Whitney Land Company v. United States of America, CCH 1962 Stand. Fed. Tax Rep. (62–2 U.S. Tax Cas.) ¶9616 (Minn. July 9, 1962). The decision in this case is contrary to that reached in Kent and Taft, and does support the plaintiff's position. In the Whitney case the Court stated:

"Sections 172(b) (2) of the 1954 Code refers specifically to the amounts of carry back and carry overs. The operating loss for any taxable year shall be carried to the earliest of the seven taxable years. The portion of such loss which shall be carried to each of the other six taxable years shall be the excess of the amount of such loss over the sum of the 'taxable income' for each of the prior taxable years to which such loss may be carried.

"The term 'taxable income' is clear and unambiguous and where this is true further reference to legislative discussion or background is not required. Congress may or may not have intended the result which will be reached in this decision. The Court must be guided by what Congress has actually provided in the statute."

The Court, in Whitney, went on to say that the Commissioner, by regulation, had attempted to modify the term "taxable income" by inserting in the regulations the words "net income" along with the words "taxable income", and that this, in effect, was changing the clear and unambiguous wording of the statute itself. However, even though the words "taxable income" may be clear and unambiguous, I cannot conclude that the amount of income taxes ultimately due for the year 1952 and 1953, after the application of carry back losses, should not be governed by the provisions of the Internal Revenue Code of 1939. Under the provisions of Section 122 of the Internal Revenue Code of 1939, it is, of course, true that the taxable income, at the time of the initial filing of the income tax returns for that year, properly excluded non-taxable interest. However, under the provisions of the Revenue Code of 1939, when determining the amount of tax that ultimately must be paid for the years 1952 and 1953 after carrying back losses from subsequent years, the amount of the carry back losses must be reduced by the amount of tax-exempt interest received by the taxpayer during those years. Consequently, in determining "taxable income" for years prior to 1954, it is necessary to take into consideration the application of this tax-exempt interest. In other words, while at the time the initial income tax returns were filed and taxes paid for the year 1952, the "taxable income" did not include tax-exempt interest. However, under the provisions of the Revenue Code then in effect, should an operating loss ultimately be carried back to that year, it would be necessary to add to the taxable income for that year (or to deduct from the carry back loss) all tax-exempt interest received during that year in order to arrive at the final "taxable income" for that year. Consequently, I see nothing inconsistent between the provisions of Section 172(b) (2) of the 1954 Code wherein "taxable income" is referred to, and the regulations of the Commissioner of Internal Revenue pursuant to which he arrived at the final calculations in this case. Furthermore, the provision of Section 172(e) of the Internal Revenue Code of 1954, hereinabove quoted, is certainly clear and unambiguous. To further support this conclusion, the provisions of Section 172(f) of the Internal Revenue Code of 1954 must also be noted. This Section deals specifically with taxable years beginning in 1953 and ending in 1954. It provides specifically for applying the 1939 Code to the portion of the year falling within the year 1953, and applying the 1954 Code for the portion of the year falling within the year 1954. Thus, as previously stated, the provisions of the Revenue Code of 1954 have very clearly and unambiguously provided for all contingencies for the period of transition between the effective dates of the two Codes.

The distinction made by counsel for respondent between the calculation of a net operating loss, and the calculation of the allowable deduction, is a valid distinction. There is no question but that the provisions of the 1954 Code do apply insofar as calculating the amount of operating loss incurred in years following December 31, 1953, and in determining the amount of such losses that may be available for carry back or carry forward. This, however, is entirely different from the calculations necessary to determine the ultimate amount of taxable income in a year preceding 1954 after the application of the previously determined operating loss carry back. These latter calculations clearly, under Section 172(e) of the 1954 Code, must be made pursuant to the law applicable to the year to which the loss is carried back, which, in this case, is the Internal Revenue Code of 1939.

It is thus concluded that the determinations previously made in this case by the Commissioner of Internal Revenue are not erroneous and that plaintiff's demand for refund must be denied. Judgment should be prepared and submitted in accordance herewith.