**CALLANAN ROAD IMPROVEMENT COMPANY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 7278.**

United States District Court
N. D. New York.

Jan. 15, 1968.

Harry R. Hayes, Albany, N. Y., for plaintiff.

Justin J. Mahoney, U. S. Atty., Albany, N. Y., for defendant.

Mitchell Rogovin, Asst. Atty. Gen., David A. Wilson, Jr., Gene A. Castleberry, Attys., Dept. of Justice, Washington, D. C., of counsel.

JAMES T. FOLEY, District Judge.

### MEMORANDUM-DECISION AND ORDER

This suit is for refund of corporate income taxes allegedly overpaid for the

years 1951 through 1954. The complaint is set forth in four counts. Over a long period of time, often seemingly necessary for the presentation and disposition of most federal tax problems, a number of the issues raised by the pleadings have been settled. As the lawyers put it now, there is only one remaining issue for determination. Ordinarily, such narrowing brings comfort to a Court, but review and consideration establishes in my mind that the sole remaining issue, commendably made so precise, still presents a puzzling, difficult problem that entails interpretation and application of complex portions of the Internal Revenue Codes of 1939 and 1954, their interplay and certain regulations particularly relating to the 1954 Code. With realization of the impossibility to frame tax statutes in simple A, B, C language to allow slide-rule application, abstruse language again makes difficult the search for true intent and meaning in this particular situation. The problem is presented to the Court by formal motion of the plaintiff for summary judgment in its favor on the single issue, constituting actually a request for summary declaratory expression and direction for further computation of the refund, considering the partial settlement and impact of the favorable decision sought for the plaintiff on the issue here. The Government counters, as is its right, to the summary judgment motion with request for judgment in its favor on the remaining issue.

Primarily the discussion and determination is concerned with certain portions of Section 172 of the Internal Revenue Code of 1954 (26 U.S.C. 1958 ed., Sec. 172). The portions thereof deemed pertinent and important by the attorneys in their argument and briefing are set forth at this point.

### SEC. 172. NET OPERATING LOSS DEDUCTION.

(a) *Deduction Allowed.*—There shall be allowed as a deduction for the taxable year an amount equal to the aggregate of (1) the net operating loss carryovers to such year, plus (2) the net operating loss carrybacks to such year. For purposes of this subtitle, the term "net operating loss deduction" means the deduction allowed by this subsection.

(b) *Net Operating Loss Carrybacks and Carryovers.*

(1) Years to which loss may be carried.—A net operating loss for any taxable year ending after December 31, 1953, shall be—

(A) a net operating loss carryback to each of the 2 taxable years preceding the taxable year of such loss, and

(B) a net operating loss carryover to each of the 5 taxable years following the taxable year of such loss.

(2) Amount of carrybacks and carryovers.—Except as provided in subsection (f), the entire amount of the net operating loss for any taxable year (hereinafter in this section referred to as the "loss year") shall be carried to the earliest of the 7 taxable years to which (by reason of subparagraphs (A) and (B) of paragraph (1)) such loss may be carried. The portion of such loss which shall be carried to each of the other 6 taxable years shall be the excess, if any, of the amount of such loss over the sum of the taxable income for each of the prior taxable years to which such loss may be carried. * * *

(c) *Net Operating Loss Defined.*—For purposes of this section the term "net operating loss" means (for any taxable year ending after December 31, 1953) the excess of the deductions allowed by this chapter over the gross income. Such excess shall be computed with the modifications specified in subsection (d). * * *

(e) *Law Applicable to Computations.*—In determining the amount of any net operating loss carryback or carryover to any taxable year, the necessary computations involving any other taxable year shall be made under the law applicable to such other taxable year. The preceding sentence shall apply with respect to all taxable years wheth-

er they begin before, on or after January 1, 1954. * * *

(g) *Special Transitional Rules.*— * * *

(2) Losses for taxable years ending after December 31, 1953.—For purposes of section 122 of the Internal Revenue Code of 1939—* * *

(B) in determining the amount of the carryback to the first taxable year preceding the first taxable year ending after December 31, 1953, the portion of the net operating loss carried to such year shall be such net operating loss reduced by—

(i) the net income for the second preceding taxable year computed as if the second sentence of section 122 (b) (2) (B) of the Internal Revenue Code of 1939 applied, * * *."

Inasmuch as there is no dispute about the factual background, it shall be related briefly to point up the effect the differing interpretations of the law will have upon the retention or repayment of plaintiff's income taxes. The plaintiff changed in 1955 its accounting period from the calendar year to a fiscal year ending March 31, 1955. In that short year the plaintiff, in its return, claimed a net operating loss of $309,000.00. In 1955 Section 172 of the Internal Revenue Code of 1954 permitted the loss to be carried back two years and carried over five years as an offset against earnings. The 1955 loss therefore is first carried back to 1953 when the plaintiff's declared taxable income was $48,000.00, and then to 1954 when plaintiff said it had approximate taxable income of $457,000.00. Such amounts are approximate, due to the effect of adjustments from the partial settlement already reached. The plaintiff-taxpayer's percentage depletion deduction for 1953 in round figures approximated $164,000.00, while the cost depletion of 1953 was only about $6,000.-00. This substantial difference or excess of the percentage depletion deduction over the cost depletion figure in the neighborhood of $158,000.00 is the cause of the need for this further judicial determination.

The loss provision of the 1939 Code permitted the loss carryback or carryforward only against the so-called *economic* income of another year. This net income under the 1939 Code had to be increased by certain income factors which were not includible in computing the income tax for that particular year. The addition admittedly here that would have to be made under the 1939 net income provisions for carryback or carryforward would be the excess of percentage cost depletion deduction over the cost depletion deduction. The Internal Revenue Code of 1954 discarded this economic or net income concept and provided that net operating loss deductions should be determinined upon the basis of "taxable income", the term substituted in the revised Code for net income. There is helpful writing to trace this particular change of legislative concept between the two codes in this regard in American Bank & Trust Co., Baton Rouge, La. v. United States (E.D. La.), 212 F.Supp. 148, and the affirming opinion in 333 F.2d 416, 5 Cir. (1964). Equally clarifying on these carryback and carryforward provisions and the important change of terminology from "net income" to "taxable income" is the discussion and decision in the authority that must be regarded as one of the utmost importance here: United States v. Whitney Land Co., 8 Cir., 324 F.2d 33 (1963).

The concrete problem here as stated by the plaintiff is whether the 1955 loss carryback to 1953 to be carried over to 1954 should be reduced by the economic income for 1953 under the provisions of the 1939 Code or by the new precept of taxable income under the 1954 Code. The question, and it is about the same, as framed by the government, is whether the absorption of a net operating loss sustained in 1955 and carried back to 1953 is to be governed by the 1954 or the 1939 Internal Revenue Code provisions when computing the loss to be carried forward to 1954. The figures stated previously should make apparent the substantial effect of this disagreement. There is no disagreement between the

parties that in computing the tax refund only for the year 1953 the loss carryback from 1955 is applied against the net income as increased by the approximate $158,000.00 excess of percentage depletion deduction over cost depletion deduction. Despite this concession for computation of the refund for 1953 the taxpayer contends that the unabsorbed loss to be carried to 1954 should be calculated differently as if 1953 were a 1954 code year for the carryforward computation. The government position is the unabsorbed loss to be carried from 1953 to 1954 should be the actual remainder after the application of the 1955 loss to the economic income of 1953.

The plaintiff, to sustain its cause, relies upon the ruling in the Whitney case. It says Whitney is on all fours with this case and the government counters that the Whitney Court exaggerated the scope of Section 172(b) (2) of the 1954 Internal Revenue Code, and erred in ignoring the plain meaning of Section 172(e) of the same Code. With appreciation of the seriousness for a single District Judge to disagree with a learned panel of a distinguished federal Appellate Court of another Circuit, I am inclined to the position of the government and do not follow the Whitney reasoning and ruling in this factually similar situation.

The Whitney Court, at page 37, emphasized as a vital factor to support its determination the sentence in 172(b) (2): "The portion of such loss which shall be carried to each of the other 6 taxable years shall be the excess, if any, of the amount of such loss over the sum of the taxable income for each of the prior taxable years to which said loss may be carried." Then, the interpretation confined to these words was that where the loss years and the tax years involved are 1954 years, the loss to be carried forward is the excess of the loss in the earlier years over the taxable income as defined by the 1954 Code. There as here this ruling would mean the 1955 loss should be applied against 1953 taxable income instead of net income to compute the absorption and the amount to be carried forward. There as here the government pressed Section 172(e) of the 1954 Code as an important modification of Section 172(b) (2), but the Circuit Court, although recognizing ambiguity in the wording of Section 172(e), restricted its statement to a particular clause and ruled that clause meant only the net operating loss shall be determinable under the law applicable to the loss year and was not intended to deal with absorption of losses to be carried to other years. The Whitney Court struck down as inconsistent with its interpretation of the Statute Treasury Regulation 1.172–4(a) (3), (1954 Code, 26 C.F.R.), wherein the words in parenthesis (or net) were inserted to instruct in the computation of the amounts of loss to be carried generally to other taxable years. It is not my thought the language of Section 172(e) is so concise and simple in terminology to destroy on its face the Whitney interpretation of Section 172(b) (2). In fact, I have found putting the clauses together for sensible conclusion quite bewildering. There is splendid dissection of Section 172(e) in the government brief and particularized discussion of it by Judge West in the American Bank & Trust Company case. I do not feel this section can be shouldered aside as completely overridden by the general terms of Section 172 (b) (2), mainly, I think, cast in terms of foresight to apply for the years generally that will be involved after 1954.

The example of the government analyzing the terms of 172(e) is worthy of repetition herein to resolve the sense of the terms for this problem:

"In determining the amount of * * * (the) net operating loss * * * carryover to * * * (1954), the necessary computations involving * * * (1953) shall be made under the law applicable to * * * (1953). Also deserving of serious consideration, in my judgment, is the paradox pointed out by the government that under the Whitney reasoning, despite the broad, unlimited breadth first given the words in Section 172(b) (2), the decision of the Court then limits expressly taxable income absorption

measure only where the loss years and tax years are 1954 Code years. It does seem odd that under Whitney it is agreed the tax itself for 1953 will be determined under the old formula, but for carry-forward to 1954 the taxable income amount is to be used.

Basically, my difference in reasoning and conclusion from Whitney is created by legislative history that indicates a serious attempt to bridge over the gap and provide specific transitional rules for reasonable guide to resolve problems bound to arise by the years which span the two codes, particularly so in carry-back and carryover complexities as here. My review will not allow the lopping off of a section such as 172(e) that is so detailed, and thus make it completely purposeless in the scheme of the new Statute. The Senate and House Committee Reports discuss this subsection (e) as a meaningful one and their particular expressions that any adjustments to a 1954 loss when carried back to 1952 or 1953 will be made under the 1939 Code are strongly demonstrative, I believe, of its significance in situations of this kind. (3 U.S.C. Cong. & Adm.News (1954), pg. 4194; id. pg. 4850).

 The statutory principle of construction I adopt to reach my conclusion is the "whole Statute" one. That teaching is to construe the legislation with reference to its leading idea and purpose. Each point shall be construed as much as possible in connection with every other part or section so as to produce a harmonious whole. (See 2 Sutherland Statutory Construction, 3rd Ed., Section 4703; compare Section 4702). In my judgment, the overall intent of the technical wording throughout in the portions of the Statute under consideration seems to place, when possible, a 1939 year computation under the old 1939 Internal Revenue Code. (See Frederick Steel Co. v. C.I.R., 6 Cir., 375 F.2d 351, 354). I find no good reason to exempt the measure of absorption loss to be carried to a 1954 Code year.

I also find—although I think the question is closer then the one just discussed of the application of Section 172(e)—

that Section 172(g) (2) (B) (i) may govern the precise situation here. Again, that wording is heavy and difficult to pierce with any sense of ease, but I do not agree with the plaintiff's contention that the terms apply solely to a loss arising in a taxable year ending in 1954. The introduction is for "Losses for taxable *years* ending after December 31, 1953." (emphasis mine). Again, the Senate Report, in my judgment, supports the contention of the government that the legislative example given for carryover to a subsequent year after 1954 from a carryback to a 1939 Code year shall be computed under the 1939 Code. (3 U.S.C. Cong. & Adm.News (1954), pg. 4850.)

The motion by the plaintiff for summary judgment on the single issue presented is denied. Summary judgment is granted in favor of the government on such issue. A formal judgment shall be agreed upon and submitted for signature by the Attorneys in accordance herewith, otherwise judgment shall be settled upon five days' notice.

It is so ordered.