**LUTHERAN SOCIAL SERVICE OF MINNESOTA, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 84–5074.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1984.

Decided April 3, 1985.

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

Arthur Doten, Minneapolis, Minn., for appellant.

Robert Bernstein, Washington, D.C., for appellee.

Before HEANEY, ROSS and FAGG, Circuit Judges.

ROSS, Circuit Judge.

Lutheran Social Service of Minnesota (LSS) filed this action to obtain a refund of a $700.00 penalty which had been assessed against it by the Internal Revenue Service (IRS) for failing to file a tax information reporting form (Form 990) on time. The appellant claimed that it was exempt from filing the form under 26 U.S.C. § 6033. The district court[1] rejected LSS's position and this appeal followed. Jurisdiction in this court is based on 28 U.S.C. § 1291.

## I. FACTS

The facts in this case are essentially undisputed, and are as follows. LSS is a tax-exempt, nonprofit social service agency that is affiliated with the various synods of the Lutheran Church. The board of directors of LSS is elected by the Minnesota representatives of the three major national Lutheran bodies: the American Lutheran Church, the Lutheran Church in America, and the Lutheran Church-Missouri Synod. It is a separate corporation from these bodies. The articles of incorporation of LSS provide that the purposes of the organization are:

1. To witness to the Gospel of Jesus Christ through ministrations of Christian love to those who may be served, in conformity with the faith and practice of the church bodies to which this corporation is responsible.

2. To develop and maintain a program of Christian social welfare, with appropriate facilities, as needs are demonstrated and resources permit.

3. To work in close cooperation with other health and welfare programs in the community.

4. To participate in coordinating programs which may be sponsored by the church or community.

The services LSS provides include child care and adoption services, family and individual counseling services, residential treatment services for the emotionally disturbed, residential treatment services for mentally retarded adolescents and mentally retarded adults, residential treatment services involving a community based correctional program for young male felons, a nutrition program for the aging, a camp for mentally and physically impaired individuals, community counseling programs, resettlement programs, and a chaplaincy program. LSS charges fees for its services according to its clients' ability to pay. Additionally, approximately 65 percent of its operating budget is derived from federal, state, and county funds.

LSS maintains that the services it provides are religious in that they are "religiously motivated, a manifestation of religious belief, a form of worship, and a means of propagation of the Christian faith, according to the tenets and practices of [the Lutheran Churches by which LSS is owned and controlled]." Appellant's Brief at 18. LSS admits, however, that many of its services would be secular in nature if performed by secular organizations.

The dispute involved here arose when LSS filed a Form 990 (Return of Organization Exempt from Income Tax) with the IRS on July 24, 1979, for the tax year 1978. Since the form was due two months earlier, the IRS assessed a $700 late filing penalty pursuant to 26 U.S.C. § 6652(d). After paying the penalty, the plaintiff filed a claim for a refund arguing that it was exempt from the filing requirement pursuant to 26 U.S.C. § 6033(a)(2)(A)(i). The IRS eventually denied the claim giving rise to this lawsuit.[2] The issue came before the district court for resolution on cross motions for summary judgment. The government's motion was granted, and the refund denied. This appeal followed. For the reasons stated herein we reverse.

## II. ISSUE

The issue presented by this appeal is whether LSS, a church-affiliated tax-exempt organization, is exempt from filing annual informational returns pursuant to 26 U.S.C. § 6033(a)(2)(A)(i).[3]

## III. DISCUSSION

### A. Introduction

The statute which requires tax exempt organizations to file informational returns provides:

§ 6033. **Returns by exempt organizations**

(a) **Organizations required to file.—**

(1) **In general.—**Except as provided in paragraph (2), every organization exempt from taxation under section 501(a) shall file an annual return, stating specifically the items of gross income, receipts, and disbursements, and such other information for the purpose of carrying out the internal revenue laws as the Secretary may by forms or regulations prescribe * * *.

26 U.S.C. § 6033(a)(1). The statute excepts certain types of organizations from this filing requirement:

---

2. We note that the parties acknowledged at oral argument that this is a test case. It is designed to resolve "the current concern of church leaders and federal tax officials * * * [regarding] section 6033 of the Code, as amended in 1969." Wheelan, "Church" in the Internal Revenue Code: The Definitional Problems, 45 Fordham L.Rev. 885, 891 (1977) (hereinafter cited as Wheelan ).

3. Lutheran Social Service also raises several constitutional issues claiming that the Treasury regulation enacted pursuant to section 6033 is invalid on first amendment and equal protection grounds. Our resolution of the statutory issues presented obviates the need for us to consider the appellant's constitutional claims. See Beeson v. Hudson, 630 F.2d 622, 627 (8th Cir.1980).

(2) **Exceptions from filing.—**

 **(A) Mandatory exceptions.** Paragraph (1) shall not apply to—

 (i) *churches, their integrated auxiliaries, and conventions or associations of churches,*

 (ii) any organization (other than a private foundation, as defined in section 509(a)) described in subparagraph (C), the gross receipts of which in each taxable year are normally not more than $5,000, or

 (iii) the exclusively religious activities of any religious order.

26 U.S.C. § 6033(a)(2)(A) (emphasis added). Additionally, organizations that are not separately incorporated from the churches with which they are affiliated are exempt under the mandatory exception for churches. *See* Treas.Reg. § 1.6033–2(g)(5)(iv), example 6. *Cf. St. Martin Evangelical Lutheran Church v. South Dakota,* 451 U.S. 772, 784, 101 S.Ct. 2142, 2149, 68 L.Ed.2d 612 (1981) (church-affiliated schools that have no separate legal existence from a church are exempt from Federal Unemployment Tax Act).

LSS contends that it is exempt from filing the Form 990 informational return because it is a "church" or a "convention or association of churches" within the meaning of section 6033(a)(2)(A)(i). Furthermore, although LSS concedes that it is not an integrated auxiliary of a church as the term is defined by the IRS, LSS asserts that the Treasury regulation which defines integrated auxiliary is invalid because it includes an exclusively religious purpose requirement not contained in the statute. *See* Treas.Reg. § 1.6033–2(g)(5)(i). Although we reject the appellant's position that LSS is a church or a convention or association of churches, we agree that the exclusively religious purpose requirement embodied in Treas.Reg. § 1.6033–2(g)(5)(i) is contrary to the legislative history of section 6033.

**B. Church**

The appellant contends that it is entitled to an exemption as a church within the meaning of 26 U.S.C. § 6033(a)(2)(A)(i). We do not agree.

Section 6033 does not define the term "church," and the Treasury regulations to that section make no attempt to clarify the term. *See Wheelan, "Church" in the Internal Revenue Code: The Definitional Problems,* 45 Fordham L.Rev. 885, 893 (1977) (hereinafter cited as *Wheelan* ). "Church" is, however, defined in Treasury Regulation § 1.511–2(a)(3)(ii), a regulation that pertains to organizations exempt from taxes on unrelated business income. The regulation provides in part:

 (ii) The term "church" includes * * * a religious organization if such * * * organization (a) is an integral part of a church, and (b) is engaged in carrying out the functions of a church, whether as a civil law corporation or otherwise. In determining whether a religious * * * organization is an integral part of a church, consideration will be given to the degree to which it is connected with, and controlled by, such church. A religious * * * organization shall be considered to be * * * carrying out the functions of a church if its duties include the *ministration of sacerdotal functions* and the *conduct of religious worship* * * * [which is to be determined based upon] the tenets and practices of a particular religious body constituting a church.

Treas.Reg. § 1.511–2(a)(3)(ii) (emphasis added). Additionally, the IRS has developed fourteen criteria which it applies to individual organizations when determining whether the organization is a church:

 (1) a distinct legal existence

 (2) a recognized creed and form of worship

 (3) a definite and distinct ecclesiastical government

 (4) a formal code of doctrine and discipline

 (5) a distinct religious history

 (6) a membership not associated with any other church or denomination

 (7) an organization of ordained ministers

(8) ordained ministers selected after completing prescribed studies

(9) a literature of its own

(10) established places of worship

(11) regular congregations

(12) regular religious services

(13) Sunday schools for religious instruction of the young

(14) schools for the preparation of its ministers.

Speech of Jerome Kurtz, IRS Commissioner, at PLI Seventh Biennial Conference on Tax Planning, Jan. 9, 1978, *reprinted in* Fed.Taxes (P–H) ¶ 54,820 (1978). As one court has observed with respect to these criteria:

> While some of these are relatively minor, others, *e.g.* the existence of an *established congregation* served by an organized ministry, the provision of *regular religious services* and religious education for the young, and the dissemination of a doctrinal code, are of central importance. The means by which an avowedly religious purpose is accomplished separates a "church" from other forms of religious enterprise. *See Chapman v. Commissioner of Internal Revenue, supra*, 48 T.C. [358] at 367 [ (1967) ] (Tannenwald, J., concurring). At a minimum, a church includes a body of believers or communicants that assembles regularly in order to worship. Unless the organization is reasonably available to the public in its conduct of worship, its educational instruction, and its promulgation of doctrine, it cannot fulfill this associational role.

*American Guidance Foundation, Inc. v. United States*, 490 F.Supp. 304, 306 (D.D.C.1980) (emphasis added).

■ When we view the activities of LSS in light of the regulation and criteria set forth above, we believe that the district court was correct in concluding LSS is not a church. LSS's primary activities consist of providing social services to the public at large irrespective of their religious beliefs. Not only are the services available to persons of any religious belief, but LSS's counselors are not required to counsel with any particular religious orientation. Such services are secular in nature when performed by secular organizations, and cannot be transformed into "ministrations of sacerdotal functions" merely because they are performed by a religiously affiliated social service organization like LSS. *See De La Salle Institute v. United States*, 195 F.Supp. 891, 903 (N.D.Calif.1961). Additionally, as the district court found, while LSS does have a chaplaincy program whereby it enters into service contracts with hospitals, nursing homes, etc., to provide full or part-time chaplains, there is no evidence in the record that regular worship services are held.

■ Our reading of the record indicates that LSS is a social service agency, and it cannot become a church within the meaning of section 6033(a)(2)(A)(i) merely by being affiliated with a church.[4]

## C. Convention or Association of Churches

Just as the statute and regulations failed to define "church," they also fail to define "convention or association of churches." *See Wheelan, supra*, at 893. LSS contends that a literal dictionary definition should be applied. Under the appellant's construction of the statute it would clearly be entitled to an exemption because LSS represents the association of three Lutheran churches. To accept appellant's position would be to exalt literalism over the historical usage of the phrase by Congress.

---

**4.** The district court substantially relied on *De La Salle Institute v. United States*, 195 F.Supp. 891 (N.D.Calif.1961), wherein the court stated: "What is a 'church' * * * must be interpreted in the light of the *common understanding* of the word." *Id.* at 903 (emphasis added). The Supreme Court has refused to either endorse or reject this approach. *See St. Martin Evangelical Lutheran Church v. South Dakota*, 451 U.S. 772, 784 n. 15, 101 S.Ct. 2142, 2149 n. 15, 68 L.Ed.2d 612 (1981). Likewise, we express no opinion as to the validity of the "common understanding" approach.

In the Revenue Act of 1950 Congress imposed a tax on unrelated business income of all 501(c)(3) organizations except churches and conventions or associations of churches. *See Wheelan, supra,* at 902 & n. 77. The term "convention or association of churches" was added to the statute at the urging of Baptist leaders. *Id.* at 925–26 & n. 166. This addition relieved concerns that the term "church" included hierarchical churches (such as the Catholic Church), but not congregational churches in which each local congregation is autonomous (such as with the Baptist). *Id.* at 902–03 & n. 80. Therefore, churches *and* conventions or associations of churches were exempted to give equal federal tax treatment to both hierarchical and congregational churches. *Id.*

■■■ Since the legislative history to section 6033 is silent as to the meaning of "convention or association of churches," and Congress was aware of the meaning previously attributed to the phrase, we conclude that Congress intended the term to be construed in a manner consistent with its prior use. Congress uses the term "convention or association of churches" merely to refer to the organizational structures of congregational churches. Accordingly, and additionally, for the reasons stated in part B. of this opinion, LSS does not qualify for the "convention or association of churches" exemption contained in section 6033.

### D. Integrated Auxiliary

Section 6033 also provides an exemption to integrated auxiliaries of a church.[5] The Treasury has defined "integrated auxiliary" as follows:

(5)(i) For purposes of this title, the term "integrated auxiliary of a church" means an organization:

(*a*) Which is exempt from taxation as an organization described in section 501(c)(3);

(*b*) Which is affiliated (within the meaning of paragraph (g)(5)(iii) of this section) with a church; and

(*c*) Whose principal activity is exclusively religious.

Treas.Reg. § 1.6033–2(g)(5)(i). The IRS concedes that LSS satisfies the first two requirements, but it has nonetheless denied LSS exempt status because the organization's principal activity is not "exclusively religious." Treasury Regulation § 1.6033–2(g)(5)(ii) defines "exclusively religious" as follows:

(ii) An organization's principal activity will not be considered to be exclusively religious if that activity is educational, literary, charitable, or of another nature (other than religious) that would serve as a basis for exemption under section 501(c)(3).

*Id.*

LSS does not contend that its activities are exclusively religious, rather LSS asserts that the inclusion of an exclusively religious test in the definition of "integrated auxiliary" is invalid because it is contrary to the statute and to legislative intent. The appellant claims that nothing in the legislative history of section 6033 supports the inclusion of an exclusively religious test, and in fact, that the legislative history is to the contrary.

The Senate Finance Committee Report that accompanied the Tax Reform Act of 1969, did not define the term "integrated auxiliary"; it did, however, provide the fol-

---

5. We necessarily construe the word "church" in section 6033 to include both organizational forms of churches with respect to "churches and their integrated auxiliaries." Any other construction of the phrase—*i.e.,* if "church" were construed as meaning only hierarchical churches such as the Catholic Church—would result in an unconstitutional construction of the statute because favorable tax treatment would be accorded to hierachical churches while being denied to congregational churches, in violation of the first amendment. Courts should avoid construing statutes in ways that would render them unconstitutional, *Postscript Enterprises, Inc. v. Whaley,* 658 F.2d 1249, 1253 (8th Cir. 1981), particularly in cases such as this where Congress clearly sought to equalize tax treatment among religions. *See Wheelan, supra* note 2, at 902–03 & n. 80.

lowing list of examples of organizations that were intended to be included in that category:

> Among the auxiliary organizations to which this exemption applies are the mission societies and the church's religious schools, youth groups, and men's and women's organizations, and interchurch organizations of local units qualifying as local auxiliaries.

S.REP. NO. 552, 91st Cong., 1st Sess. 52, *reprinted in* 1969 U.S.CODE CONG. & AD.NEWS 1645, 2027, 2080 (hereinafter cited as S.Rep. No. 552). At the conference on the House and Senate versions of the 1969 Tax Reform Act, the Senate's version of section 6033 was adopted. *See Wheelan, supra,* at 915. The Conference Committee Report stated:

> The integrated auxiliary organizations to which this applies include the church's religious school, youth group, and men's and women's clubs.

H.R.REP. NO. 782, 91st Cong., 1st Sess. 286, *reprinted in* 1969 U.S.CODE CONG. & AD.NEWS 2392, 2400 (hereinafter cited as H.R.Rep. No. 782).

LSS argues that the types of organizations that are expressly exempted are no more "exclusively religious" in their activities than it is, and that by providing an exemption for such groups, Congress could not have intended that an "exclusively religious" test be applied to integrated auxiliaries.

In response, the government contends that the court must grant deference to Treasury regulations that implement the congressional mandate in a reasonable manner, and that the regulation in question must be sustained unless unreasonable and plainly inconsistent with the statute. *See Commissioner v. Portland Cement Co.,* 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981). The IRS asserts that the exclusively religious test is not plainly inconsistent with the statute or legislative history, and therefore must be upheld.

■ While it is true that Treasury regulations are entitled to a great deal of deference, we cannot "rubber-stamp" the regulation if it will "frustrate the congressional policy underlying a statute." *Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority,* 464 U.S. 89, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983). A Treasury regulation that is inconsistent with the statute upon which it is based cannot be sustained. *See United States v. Whitney Land Co.,* 324 F.2d 33, 38 (8th Cir.1963); *De La Salle, supra,* 195 F.Supp. at 904–05. In this case, both the plain language of section 6033 and the legislative history of section 6033 convince us that the IRS regulation is inconsistent with clear congressional policy.

■ Looking first to the language of the statute, we bear in mind that " '[w]here Congress includes particular language in one section of a statute but omits it in another section of the same [statute], it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States,* 464 U.S. 16, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (quoting *United States v. Wong Kim Bo,* 472 F.2d 720, 722 (5th Cir.1972)). Here, while Congress specifically required that religious orders be "exclusively religious" to qualify for section 6033's mandatory exceptions, 26 U.S.C. § 6033(a)(2)(A)(iii), it did not mandate the same requirement with respect to integrated auxiliaries, *id.* at § 6033(a)(2)(A)(i). This omission on the part of Congress can only be viewed as an intentional and purposeful decision not to limit the group of integrated auxiliaries qualifying for the filing exception to those that are exclusively religious.

This conclusion is particularly compelling given that Congress' inclusion of the "exclusively religious" test with respect to religious orders and Congress' exclusion of this test with respect to integrated auxiliaries occur within the very same subsection of section 6033, rather than in two separate and unrelated subsections. Thus, it is clear that Congress had this test in mind when adopting section 6033, and as such had Congress intended the "exclusively religious" test to apply to integrated auxilia-

ries, "it presumably would have done so expressly as it did" with respect to religious orders. *See Russello*, 104 S.Ct. at 300. The government's attempt to include an exclusively religious component in the definition of an integrated auxiliary unreasonably restricts the intended scope of the section's mandatory exceptions, is contrary to Congress' clear intent, and thus cannot be sustained.

The district court rejected LSS's position that the types of organizations expressly exempted were no more "exclusively religious" than it was, on the basis of a subsequent piece of legislative history. The district court stated:

> The plaintiff's argument is undercut by a subsequent piece of legislative history. In the Tax Reform Act of 1976, Congress again used the term "integrated auxiliary of a church" in a statute dealing with lobbying by charities. *See* 26 U.S.C. § 501(h). The House Ways and Means Committee Report on that act, prepared after the Treasury Department had proposed the regulations at issue here, states:
>
> > Because proposed regulations have recently been published regarding the meaning of the term "integrated auxiliary" and because that term is used in this bill, your committee wishes to make it clear—in agreement with the conclusions of the proposed regulations—that *theological seminaries, religious youth organizations, and men's fellowship associations which are associated with churches would generally constitute integrated auxiliaries.* Your committee also intends (in agreement with the conclusions in the proposed regulation) that *hospitals, elementary grade schools, or-*

> > *phanages, and old-age homes are organizations which frequently are established without regard to church relationships and are to be treated for these purposes the same as corresponding secular charitable, etc., organizations; that is, such entities are not to be regarded as "integrated auxiliaries."*
>
> H.R.Rep. No. 1210, 94th Cong., 2d Sess. 15–16. (Emphasis added.) Clearly, the House Committee would expressly exclude social welfare organizations such as the plaintiff from the definition of "integrated auxiliary" while expressly including the other types of organizations listed. This is precisely the result achieved by the regulation challenged in this case.

*Lutheran Social Service v. United States,* 583 F.Supp. 1298, 1305 (D.Minn.1984). The court recognized that the Conference Committee took "no position" on the House Report's language, H.R.Rep. No. 1515, 94th Cong., 2d Sess. 533, *reprinted in* 1976 U.S.CODE CONG. & AD.NEWS 2897, 4118, 4230, and that the Senate Report did not discuss the meaning of "integrated auxiliary." On this basis the court concluded that the legislative history was inconclusive and that, therefore Treasury Regulation § 1.6033–2(g)(5) was not plainly inconsistent with the statute or the legislative history.

The deficiency in the court's analysis is that it relies upon ambiguities in the legislative history of a subsequent and unrelated statute to provide the basis for its conclusion that the legislative history of section 6033 was inconclusive. The district court's reliance on the legislative history of a subsequent unrelated Act was misplaced.[6]

---

**6.** This court recently cautioned against excessive reliance on subsequent legislative history:

> We first generally observe, as the Supreme Court has pointed out, that "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *Consumer Product Safety Commission v. GTE Sylvania*, 447 U.S. 102, 117–18 [100 S.Ct. 2051, 2060–61, 64 L.Ed.2d 766] (1980), (quoting

*United States v. Price*, 361 U.S. 304, 313 [80 S.Ct. 326, 331, 4 L.Ed.2d 334] (1960)). As the Court also stated in *Consumer Product Safety Commission*:

> Petitioners invoke the maxim that states: "Subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction." * * * With respect to subsequent *legislation*, however, Congress

This reading of section 6033 is supported by the section's legislative history. The Senate and Conference Committee Reports were virtually identical in their understanding of what types of organizations would be exempted as integrated auxiliaries. See S.Rep. No. 552; H.R.Rep. No. 782. Many of the organizations specifically referred to such as youth groups and men's and women's clubs, are no more "exclusively religious" than LSS. Congress, therefore, could not have intended that an exclusively religious test be applied when determining whether an organization such as LSS is an integrated auxiliary under section 6033.[7] When the exclusively religious requirement is removed or eliminated from Treasury Regulation § 1.6033-2(g)(5)(ii) it is uncontested by the IRS that LSS is an integrated auxiliary as the IRS defines the term.

 The plain meaning of the words of the statute, combined with the legislative history, persuade us to hold that LSS falls within the purview of the statute.[8] LSS is substantially connected with the Lutheran faith, and it performs functions of the church bodies to which it is related by satisfying the tenet of the Lutheran faith which requires the stimulation of works of mercy through social action ministries developed to promote human welfare. The IRS concedes that LSS is a nonprofit organization affiliated with a church in that it is "controlled by or associated with a church." See Treas.Reg. § 1.6033-2(g)(5)(iii). LSS is separately incorporated from a church, see Treas.Reg. § 1.6033-2(g)(5)(iv), example 6, accordingly it must derive its exempt status as an integrated auxiliary.

## IV. CONCLUSION

LSS is not a church or a convention or association of churches within the meaning of section 6033. However, it is entitled to an exemption under that section as an integrated auxiliary of a church. The exclusively religious test contained in the regulation defining "integrated auxiliary" is inconsistent with the legislative history of section 6033, and as such, cannot be relied upon to deny LSS exempt status. Accordingly, we reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

has proceeded formally through the legislative process. A mere statement in a conference report of such legislation as to what the Committee believes an earlier statute meant is obviously less weighty.
447 U.S. at 118 n. 13 [100 S.Ct. at 2061 n. 13] (citations omitted) (emphasis in original); See also Oscar Mayer & Co. v. Evans, 441 U.S. 750, 758 [99 S.Ct. 2066, 2072, 60 L.Ed.2d 609] (1979) (whatever evidence concerning Congress' intent in enacting a certain provision might be provided by a committee report written eleven years later was plainly insufficient to overcome clear and convincing evidence concerning congressional intent at the time of the enactment).
Sierra Club v. Clark, 755 F.2d 608, 617 (8th Cir.1985).

7. As Professor Wheelan stated:
[T]he * * * regulations require that an integrated auxiliary's "principal activity" be "exclusively religious" in the sense that it is not also educational, charitable, or within one of the other section 501(c)(3) categories * * *. This requirement seems inconsistent with * * [Congress's] recognition that separately incorporated church youth groups qualify as integrated auxiliaries. Many such * * * groups could * * * qualify, without any church affiliation, as section 501(c)(3) organizations. Moreover, once "exclusively religious" is defined as "not also charitable or educational" the realm of the "exclusively religious" becomes very narrow * * *. The churches * * themselves are not "exclusively religious" in the sense that the * * * regulations require of their "integrated auxiliaries."
Wheelan, supra note 2, at 899.

8. Our task in determining whether LSS is an "integrated auxiliary" is a difficult one because the term "has no legal history, [and] no established meaning, in either civil or ecclesiastical law." Wheelan, supra note 2, at 915. Moreover, Congress made no attempt to define the term. As discussed above the legislative history establishes that an exclusively religious purpose requirement could not have been intended by Congress; therefore, we do not believe that the fact that LSS is a social service agency that would not be exempt were it not affiliated with the Lutheran faith somehow militates against it being an integrated auxiliary. As discussed above that distinction is pertinent only in determining whether LSS is a church. See supra, at 1287-1288.