**COLUMBIA POWER TRADES COUNCIL (Union), Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF ENERGY, Bonneville Power Administration (BPA), and Sterling Munro, as BPA Administrator, Defendants.**

No. C79–1135S.

United States District Court, W. D. of Washington.

Aug. 22, 1980.

As Amended Sept. 23, 1980.

Hugh Hafer, Richard H. Robblee, Hafer, Cassidy & Price, Seattle, Wash., for plaintiff.

John C. Merkel, U. S. Atty., Charles Pinnell, Asst. U. S. Atty., Seattle, Wash., for defendants.

ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, and DEFENDANTS' CROSS–MOTION FOR SUMMARY JUDGMENT

ROTHSTEIN, District Judge.

THIS CAUSE comes before the Court on the above–captioned Motions for Summary Judgment. After reviewing the Motions, memoranda, and other pleadings herein, and being fully advised, the Court rules as follows:

In the General Government Appropriations Act of 1979, Congress imposed a 5.5% "pay cap" on wage increases for employees in positions funded by federal appropriations. *See* P.L. 95–429, § 614(a), [1978] *U. S. Code Cong. & Admin. News*, 92 Stat. 1001, 1018. This "pay cap", which affected most federal employees, was intended to restrain inflation.

On January 4, 1979, the President of the United States issued a Memorandum directing executive branch administrators to take every legal step to extend the 5.5% "pay cap" to "nonappropriated fund employees". *See* 15:1 *Weekly Compilation of Presidential Documents*, 8 (1979).

In early 1979, the Columbia Power Trades Council (CPTC), representing employees of the Bonneville Power Administration (BPA), was negotiating to renew its labor contract with BPA. When BPA refused to offer more than a 5.5% pay increase, the parties acknowledged an impasse and referred the matter to interest arbitration under Article 9.02 of their Basic Agreement. *See* attachment to Affidavit of Robert W. Ayers, filed February 7, 1980.

On June 26, 1979, the arbitration panel issued an award which called for an 8.53% increase in the wages of CPTC journeymen. The arbitrators derived this percentage by comparing the average rates paid by eight other major utilities in the BPA service area. The arbitrators concluded (2–1) that the President's Memorandum "does not necessarily apply to the negotiated rates for employees of the Bonneville Power Administration who are represented by the Columbia Power Trades Council." Exhibit A–24 to plaintiff's Complaint, filed October 3, 1979.

By letter dated July 24, 1979, the BPA Administrator, Mr. Sterling Munro, informed CPTC that because of the Presi-

dent's order, "the arbitration award cannot be implemented with regard to the amount of the pay increase." Exhibit B–26 to the Complaint. BPA did, however, put a 5.5% pay increase into effect.

CPTC now seeks a ruling to enforce the arbitrators' award of a 8.53% pay increase. Meanwhile, defendants seek a ruling that the BPA Administrator had discretionary authority to implement the President's 5.5% "pay cap".

1. Plaintiff has clearly alleged a proper basis for the Court's subject matter jurisdiction under 28 U.S.C. § 1331(a).

2. Plaintiff has properly alleged venue in this judicial District under 28 U.S.C. § 1391(e)(4).

■ Plaintiff offers uncontradicted authority for the proposition that an unincorporated labor organization may be held to reside wherever its individual members reside. For venue purposes, a union may be found to reside in judicial districts other than that of its principal place of business. *See United Steelworkers v. R. H. Bouligny, Inc.*, 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965). Plaintiff's business manager testifies that CPTC includes nine constituent unions, of which four are headquartered in Vancouver, Washington. Affidavit of Robert W. Ayers, filed February 7, 1980, at p. 2. Mr. Ayers adds that over two–thirds of BPA's hourly employees are stationed in Washington State, of whom a "substantial proportion" are employed in the Western District. *Id.*, at p. 2. This Affidavit is uncontroverted.

■ In an action under 28 U.S.C. § 1391(e), there is no requirement that *all* plaintiffs reside in the forum. *See, e. g., Exxon Corporation v. F.T.C.*, 588 F.2d 895, 898–899 (3rd Cir. 1978).

In this case, a sufficient percentage of plaintiff's members reside in the Western District of Washington to warrant a finding of proper venue under 28 U.S.C. § 1391(e)(4).

3. Defendants argue that plaintiff should be barred from suing to enforce the arbitration award until it has first exhaust-

ed all administrative remedies under the Civil Service Reform Act of 1978, P. L. 95–454, 92 Stat. 1191. Defendants emphasize portions of that law which declare certain agency actions to constitute unfair labor practices. 5 U.S.C. § 7116(a)(5) & (6). Defendants claim that to challenge BPA's rejection of the 8.53% pay award, CPTC must first bring an unfair labor practice charge before the Federal Labor Relations Authority (FLRA).

■ To begin with, however, there is some question whether the Civil Service Reform Act *requires* filing such a charge. It grants broad deference to contractual procedures by which parties agree to resolve grievances among themselves. 5 U.S.C. §§ 7116(d) & 7121(a)(1). Here, the parties' wage dispute concerns interpretation of their Basic Agreement. They had agreed to handle such disputes under Article 9.02. That provision accordingly appears to qualify as the kind of "grievance procedure" to which deference is given under § 7121(a)(1). *See* 5 U.S.C. § 7103(a)(9)(C)(i). In such cases, an aggrieved union which properly pursues the contractual procedure is excused from filing its claim as an unfair labor practice charge.

■ In any event, an appeal of this case to the FLRA would be futile. As plaintiff points out, the FLRA has expressly declined to rule on the "legal impact" of the President's "pay cap" Memorandum, leaving the question for the courts. *See* FLRA letter attached to plaintiff's Memorandum in Opposition, filed March 31, 1980, at p. 2. With the FLRA unwilling to adjudicate the central question at issue, it would be unreasonable to require plaintiff to pursue an unfair labor practice charge in that forum.

■ Defendants have also failed to establish that CPTC should be barred from suit by its failure to pursue remedies under federal regulations. Defendants cite 5 C.F.R. § 2411.4, which offers a procedure for obtaining records and other information from the FLRA. Reference is also made to 5 C.F.R. § 2427, which provides an *optional* procedure by which 'he president of a labor

organization may request a "general statement of policy or guidance" from the FLRA. Plaintiff need not follow either of these procedures as a prerequisite to its suit to enforce a contractual arbitration award.

■ 4. Under Rule 56, Fed. R. Civ. P., A motion for summary judgment will be granted if the moving party has demonstrated the absence of any issue of material fact and the right to judgment as a matter of law.

*Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). In this case, all parties have moved for summary judgment, and no party has raised any genuine issue of material fact. The case is accordingly appropriate for disposition by summary judgment.

5. The President's Memorandum of January 4, 1979 directed executive branch administrators to extend the 5.5% "pay cap" to nonappropriated fund employees "to the extent permissible under law". Plaintiff's claim accordingly centers on whether the BPA Administrator had legal discretion to refuse to implement the contractual arbitration award of an 8.53% increase in pay.

To determine the extent of the Administrator's discretion, it is instructive to review the history of BPA labor relations. That history is well summarized by the United States Court of Claims in *Abell v. United States*, 518 F.2d 1369, 207 Ct.Cl. 207 (1975).

When the Bonneville Power Administration was established in 1937, its employees were compensated in accord with the existing General Service law. *See* plaintiff's Brief, at p. 9. Their rates of pay were fixed by administrative action. *Abell, supra*, 518 F.2d at 1371.

During those initial years of operation, the BPA found it difficult to recruit and retain skilled and semiskilled workmen. Private utilities offered certain overtime and fringe benefits which BPA could not. Therefore, in 1945, BPA went to Congress and obtained special authority to set wages and benefits by collective bargaining, so that it could compete in the market for labor. The result was P.L. 201, 79th Cong., [1945] *U. S. Code Cong. Serv.*, 542 ff. Crit-

ical in this case is the portion of that amendment reflected in 16 U.S.C. § 832i(b). Due to an error in codification, that subsection appears incorrectly in published editions of the United States Code. *See Abell, supra*, 518 F.2d at 1376–77. It should read, in pertinent part, as follows:

> The [BPA] Administrator *may* employ laborers, mechanics, and workmen . . . subject to the civil–service laws, and fix their compensation without regard to the Classification Act of 1923, as amended, and any other laws, rules, or regulations relating to the payment of employees of the United States except the Act of May 29, 1930 (46 Stat. 468), as amended, to the extent that it otherwise is applicable.

[1945] *U. S. Code Cong. Serv.*, at 543 (emphasis added).

In 1949, a conforming amendment was passed, but it did not repeal the language of § 832i(b). *Abell, supra*, 518 F.2d at 1383. The BPA procedure for negotiating wages was similarly unchanged by the Prevailing Rate Systems law of 1972. *See* P. L. 92–392, § 9(b)(2), [1972] *U. S. Code Cong. & Admin. News*, pp. 655, 667.

From this legislative history, it appears that Congress intended to preserve BPA's authority under § 832i(b) to fix employee wages by collective bargaining.

6. Since the 1945 amendment, BPA has fixed employee compensation by collective bargaining. As a basis for bargaining, BPA and CPTC "adopted the practice" of making a joint survey of compensation rates paid by other utilities in the region. *Abell, supra*, 518 F.2d at 1371. This procedure is described in Article 8.02 of the Basic Agreement, which characterizes regional wage surveys as a "fact–finding" tool. There is no contractual requirement that BPA set wages according to generally prevailing pay rates. However, since 1957, BPA wages have apparently been set "within pennies" of the average rates paid by the eight other surveyed utilities. *See* Affidavit of Robert W. Ayers, at p. 4.

Plaintiff emphasizes BPA's statutory authority to fix pay rates "without regard to . . . any other laws, rules, or regula-

tions relating to the payment of employees of the United States . . ." According to CPTC, "[t]hat statute is the beginning and end of the case." Plaintiff's Brief, filed February 7, 1980, at p. 11. However, defendants point out that this BPA authority to engage in independent collective bargaining is a right and not an obligation. Under 16 U.S.C. § 832i(b), the BPA "*may*" fix compensation regardless of other laws, but it is not compelled to disregard such laws.

Mr. Munro, the BPA Administrator, has apparently refused to implement the contractual arbitration award in a good faith belief that he had discretionary authority to do so.

■ The Basic Agreement between CPTC and BPA provides that when the parties cannot reach agreement on pay rates, they shall refer their dispute to mediation and arbitration. *See* Article 8.07. Article 9.02 provides that when mediation fails, the parties shall submit their controversy to arbitration. As evidence of the Administrator's discretionary authority, defendants point to Article 9.02 of the Basic Agreement:

> The decision of the majority of said arbitrators shall be final and binding on both parties *upon approval by the Administrator.*

[emphasis added]. The Administrator's discretion under this clause implicitly entails the power to reject an arbitration award, particularly when he acts under a Presidential directive grounded in reasonable public policy.

■ The enactment of 16 U.S.C. § 832i(b) vested discretion in the BPA Administrator to bargain collectively as to the wages of BPA employees. He could presumably have exercised that authority by committing BPA to a labor contract in which wage disputes would be settled by binding arbitration. In fact, the parties' Basic Agreement does refer such disputes to arbitration, but the ensuing award is only binding upon BPA *when it is approved by the Administrator.* Where the Administrator has so clearly retained a discretionary power to reject an arbitration award, he is entitled to exercise it when properly directed to do so by the President of the United States.

■ There are doubtless some limitations on the exercise of the Administrator's discretion. He should not, for example, reject an arbitration award in an arbitrary or capricious manner. In this case, however, the Administrator acted in good faith, pursuant to a Presidential directive based on the national policy against inflation.

■ The fact that for many years BPA had granted pay increases nearly equal to the average rate in the region does not create a contractual right on the part of CPTC to demand a continuation of that practice. The Basic Agreement does not bind BPA to set wages according to the prevailing rate in its service area. Section 832i(b) was intended to enlarge the BPA's bargaining authority–not to guarantee a fixed rate of wage increases to BPA employees.

The Court's construction of Article 9.02 is consistent with the broad authority granted elsewhere in the Basic Agreement to the BPA Administrator. For example, a BPA employee with a grievance may carry it to arbitration under Article 12.10g, but the arbitral decision is merely a recommendation to the Administrator. *See* Article 12.-10h. Under Article 12.10i, it is the Administrator's decision which is final.

7. Upon reviewing the history of BPA labor negotiations, and the parties' Basic Agreement, the Court finds that the Administrator, Mr. Munro, acted within his statutory and contractual authority when he refused to implement a 1979 employee pay raise which exceeded 5.5%. The Administrator did not act in an arbitrary or capricious manner by rejecting the contractual arbitration award of June 26, 1979.

The plaintiff's Motion for Summary Judgment is accordingly DENIED.

The defendants' Cross–Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

THE CLERK is directed to enter Judgment against the causes of action alleged in plaintiff's Complaint. That Judgment should reflect the Court's finding that the BPA Administrator acted within his contractual and statutory authority when he applied the 5.5% "pay cap" imposed by the President's Memorandum of January 4, 1979.

THE CLERK is further directed to mail uncertified copies of this Order to all counsel of record.