COLUMBIA POWER TRADES
COUNCIL, Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF
ENERGY, Bonneville Power Administration (BPA), and Sterling Munro, as
BPA Administrator, Defendants-Appellees.

No. 80–3384.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 9, 1981.

Decided March 11, 1982.

Hugh Hafer, Hafer, Cassidy & Price, Seattle, Wash., for plaintiff-appellant.

Charles Pinnell, David E. Wilson, Asst. U. S. Attys., Seattle, Wash., William Kanter, Paul Blankenstein, Marc Richman, Mark A. Chavez, Dept. of Justice, Civil Div., Washington, D. C., for defendants-appellees.

Before HUG and SKOPIL, Circuit Judges, and ORRICK,* District Judge.

ORRICK, District Judge:

Appellant, Columbia Power Trades Council ("the Union"), brought an action for declaratory and injunctive relief in the Western District of Washington against the Bonneville Power Administration ("the BPA"), its Administrator, Sterling Munro ("Munro"), and its parent agency, the Department of Energy ("USDE"). In essence, appellant sought the issuance of a writ of

___

* Honorable William H. Orrick, United States District Judge for the Northern District of California, sitting by designation.

mandamus directing Munro to implement an arbitrator's award of an 8.53% wage increase to BPA hourly employees.[1] Upon cross-motions for summary judgment, the trial court entered judgment for the defendants and dismissed the complaint.[2] This appeal followed.

Because subject matter jurisdiction may be raised at any time,[3] after the case was under submission we granted leave to the Civil Division of the Department of Justice to file a supplementary brief raising for the first time the issue of subject matter jurisdiction.[4] We now hold that this court and the district court were without jurisdiction to hear this case.

## I

The appellees would have us consider the question of whether Congress intended the Federal Labor Relations Authority ("the Authority"), created under Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. § 7101 *et seq.* ("the Act"), to be the exclusive source of redress for a public union from unfair labor practices. The appellants would have us either come to the opposite conclusion or find them the subject of some exception to this exclusivity.

The Supreme Court has stated generally that where Congress has provided statutory review procedures designed to permit agency expertise to be brought to bear on particular problems and where district court jurisdiction to make initial determinations would undermine the effectiveness of the statutory design, the agency procedures are to be exclusive. *Whitney National Bank v. Bank of New Orleans & Trust Co.,* 379 U.S. 411, 420, 85 S.Ct. 551, 557, 13 L.Ed.2d 386 (1965). It is not necessary for this scheme to be explicitly labeled exclusive, *id.* at 422, 85 S.Ct. at 558, as is the National Labor Relations Act ("the NLRA").[5] Thus, our search must be for indicia of such an intention by Congress.

A. *The Legislative History of the Act.*

■ There can be no doubt after examining the legislative history that Congress intended the Act to fill the identical role in the public sector that the NLRA performs in the private sector. "The Committee intends that the Authority's role in Federal sector labor-management relations be analogous to that of the National Labor Relations Board in the private sector." H.R. Rep.No. 1403, 95th Cong., 2d Sess. 41, *reprinted in* I House Comm. on Post Office & Civil Service, 96th Cong., 1st Sess., Legisla-

---

1. Over the years, the BPA and the Union have followed a specific method by which employee compensation is set. The two jointly review the wages paid by eight large utilities within BPA's service area who perform similar work under circumstances comparable to BPA's union employees. In the past, BPA's wages have matched almost exactly the average of wages paid by the eight utilities. In June 1979, the arbitration panel provided for in the collective bargaining agreement recommended the 8.53% figure. However, in January 1979, President Carter had issued a memorandum to all agency heads with authority to set wages that an anti-inflationary wage cap of 5.5% should be put into effect. Since § 9.02 of the collective bargaining agreement provided that no arbitration was final without approval of the Administrator (Munro), he refused to approve the arbitration award and instead unilaterally implemented a 5.5% wage increase for BPA employees.

2. *Columbia Power Trades Council v. United States Department of Energy,* 496 F.Supp. 186 (W.D.Wash.1980). As Judge Rothstein pointed out in her well-written opinion, the plain meaning of the statute, 59 Stat. 546, 547, is clear.

The Administrator does not surrender his discretionary wage-setting authority by entering into a collective bargaining agreement with the Union. Further, § 9.02 of the agreement provides that the arbitration award is binding *only* upon approval of the Administrator.

3. *Liberty Mutual Insurance Co. v. Wetzel,* 424 U.S. 737, 740, 96 S.Ct. 1202, 1204, 47 L.Ed.2d 435 (1976) (*sua sponte* after oral argument on the merits in the Supreme Court); *Pacific Towboat & Salvage Co. v. I. C. C.,* 620 F.2d 727, 729 (9th Cir. 1980) (at any time); *Bialac v. Harsh Building Co.,* 463 F.2d 1185 (9th Cir.), *cert. denied,* 409 U.S. 1060, 93 S.Ct. 558, 34 L.Ed.2d 512 (1972) (after full trial and judgment in the district court).

4. The brief was filed *ten months* after the appeal was filed, *six months* after the appellees' original brief was filed, and *two-and-one-half months* after oral argument.

5. *Myers v. Bethlehem Shipbuilding Corp.,* 303 U.S. 41, 48, 58 S.Ct. 459, 462, 82 L.Ed. 638 (1938); 29 U.S.C. § 160(a).

tive History of the Civil Service Reform Act of 1978 at 678 (1979). "The committee intends that the General Counsel be analogous in role and function to the General Counsel of the National Labor Relations Board * * *." *Id.* at 679.

It is well-settled that as a general rule federal and state courts lack jurisdiction to remedy conduct covered by the NLRA because the broad grant of authority by Congress to the NLRB to interpret what constitutes an "unfair practice" under 29 U.S.C. § 158 precludes the existence of conflicting interpretations and remedies; therefore, administration of labor policy must be centralized in one body. *Vaca v. Sipes*, 386 U.S. 171, 179, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967); *San Diego Building Trades v. Garmon*, 359 U.S. 236, 242, 79 S.Ct. 773, 778, 3 L.Ed.2d 775 (1959). The unfair practices section of the Act, 5 U.S.C. § 7116, is the same in substance as § 158, so these statements of Congressional intent indicate the Act should be interpreted in a manner consistent with that given the NLRA and exclusive jurisdiction should be found.[6]

B. *The Structure of the Act.*

Congress has stated its findings that the statutory regulation of public employee labor relations "safeguards the public interest" and "contributes to the effective conduct of the public business," and that it is the purpose of the Act to "prescribe certain rights and obligations of the employees of the Federal Government and to establish procedures which are designed to meet the special requirements and needs of the Government." 5 U.S.C. § 7101. To effect this broad purpose, the Authority was created to "provide leadership in establishing policies and guidance relating to matters under this chapter, and, except as otherwise provided, shall be responsible for carrying out the purpose of this chapter." 5 U.S.C. § 7105(a)(1). Its duties include the resolution of unfair labor practices. 5 U.S.C. § 7105(a)(2)(G).

The only provision made for judicial jurisdiction appears in 5 U.S.C. § 7123. An aggrieved party may appeal the Authority's action to a court of appeals, the Authority may petition a court of appeals for enforcement of its orders, and the Authority may seek an injunction in a district court after it has issued a complaint.[7] At no point does the Act entitle a *party* to petition a district court for relief.[8] Given the broad purpose of the Act to meet the special requirements of government, the leadership role of the Authority, and the limited role of the judiciary in this statutory scheme, it is manifestly the expressed desire of Congress to create an exclusive statutory scheme. A similar conclusion was reached in the only other cases which research has indicated have expressly considered this issue: *National Federation of Federal Employees v. Commandant, Defense Language Institute*, 493 F.Supp. 675 (N.D.Cal.1980); *United States v. PATCO*, 504 F.Supp. 432, 437 (N.D.Ill.1980) (citing both *National Federation, supra*, and *Clark v. Mark, Secretary of the Air Force*, No. 79-CV-777 (N.D.N.Y. Aug. 27, 1980). We, therefore, find that the Authority possesses exclusive jurisdiction over federal labor relations matters.

**6.** There are judicial exceptions to NLRB exclusive jurisdiction where the activity is of peripheral concern to the NLRA and involves interests deeply rooted in local feeling and responsibility, or where the rule to be applied is so structured that judicial supervision will not disserve the labor statutes. *Farmer v. United Brotherhood of Carpenters & Joiners, Local 25*, 430 U.S. 290, 296-97, 97 S.Ct. 1056, 1061, 51 L.Ed.2d 338 (1977). An unfair practice claim goes to the heart of the Act and cannot be automatically determined by the courts so as not to be in conflict with the Authority's determinations. Congressionally-enacted statutory exceptions to the NLRB's jurisdiction also exist, *id.* at 297 n.8, 97 S.Ct. at 1062 n.8, but there are no such exceptions in the Act applicable to this case.

**7.** The parallel provisions of the NLRB are 29 U.S.C. §§ 160(f), (e), (j).

**8.** It should be noted that Congress considered and rejected allowing any party to a collective bargaining agreement the right to petition a district court for an order compelling the other party to proceed to arbitration, choosing instead to have the Authority consider all such questions. H.R.Rep.No. 1717, 95th Cong., 2d Sess. 157, *reprinted in* [1978] U.S.Code Cong. & Ad.News 2723, 2860, 2891.

## II

■ We must now deal with the several grounds asserted by the Union for its contention that it comes within an exception to this carefully constructed scheme, which include claims of an exception for employees who bargain over their wages, that no unfair labor practice exists, that exhaustion of administrative remedies would be futile, or that the district court had jurisdiction over this cause as an arbitration enforcement.

Section 704 of the Act [9] provides in part:

"(a) Those terms and conditions of employment and other employment benefits with respect to Government prevailing rate employees to whom section 9(b) of Public Law 92–392 applies which were the subject of negotiation in accordance with prevailing rates and practices prior to August 19, 1972, shall be negotiated on or after the date of the enactment of this Act in accordance with the provisions of section 9(b) of Public Law 92–392 without regard to any provisions of chapter 71 of title 5, United States Code (as amended by this title), to the extent that any such provision is inconsistent with this paragraph.

(b) The pay and pay practices relating to employees referred to in paragraph (1) of this subsection shall be negotiated in accordance with prevailing rates and pay practices without regard to any provision of—

(A) chapter 71 of title 5, United States Code (as amended by this title),

to the extent that any such provision is inconsistent with this paragraph * *."

It is the appellant's claim that since it has been negotiating for wages for more than twenty years this clause exempts it from coverage of the Act.

However, as the legislative history makes clear, the purpose of this section was to preserve the *scope* of the collective bargaining agreements for which these employees had negotiated. The section

"is intended to preserve the existing right of certain Federal prevailing rate employees to negotiate terms and conditions of employment. The committee intends that this subsection preserve unchanged the scope and substance of the collecting bargaining relationship between the employees' representatives and the agencies involved."

H.R.Rep.No. 95–1403, 95th Cong. 2d Sess. 61–62 (1978).[10] It is evident § 704 was aimed at any inconsistency in provisions of the Act which would limit the areas about which these employees could collectively bargain. It was not intended to exempt them from the Authority's jurisdiction for the resolution of any disputes which arose in the course of this bargaining.[11] Therefore, the Union cannot make use of this section to bring itself outside the coverage of the Act.

The Union's claim that this case does not involve any unfair labor practice [12] and is

9. 92 Stat. 1111, 1218. This section is not codified, but appears as a note to 5 U.S.C. § 5343.

10. This was in response to and intended to overrule decisions by the Comptroller General invalidating collectively bargained terms because they were not specifically authorized by legislation. H.R.Rep.No. 1717, 95th Cong., 2d Sess. 159, *reprinted in* [1978] U.S.Code Cong. & Ad.News 2893.

11. Since legislation should be construed as a whole with its leading idea and purpose in mind, so that each point can be made part of a "harmonious whole," *Callanan Road Improvement Co. v. United States*, 279 F.Supp. 481, 485 (N.D.N.Y.), *aff'd* 404 F.2d 1119 (2d Cir. 1968), this interpretation would harmonize this sec-

tion with the broad purpose of the Act. The collective bargaining rights of prevailing rate employees are preserved while keeping them within the framework envisioned by Congress for public employees. It would be inconsistent to say that Congress intended to exempt a broad group of employees from the scheme of an act designed specifically to fill the special requirements of federal labor relations.

12. The Union has attempted to characterize the case as either a breach of contract by the government or that the BPA erroneously relied on a Presidential memorandum that was in conflict with existing legislation.

therefore subject to the jurisdiction of the district court is an argument which we cannot accept. It would frustrate the Congressional scheme for either the NLRA or the Act if exclusive jurisdiction could be thwarted by a party's characterization of the nature of the lawsuit.

"Pre-emption, as shown above, is designed to shield the system from conflicting regulation of conduct. It is the conduct being regulated, not the formal description of governing legal standards, that is the proper focus of concern."

*Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America v. Lockridge*, 403 U.S. 274, 292, 91 S.Ct. 1909, 1920, 29 L.Ed.2d 473 (1971). The Union's claim against Munro is based on an interpretation of the collective bargaining agreement and Munro's alleged failure to negotiate with it as to the hourly wage rate increases as provided in the agreement. Failure to negotiate is a violation of the employer's duty under 5 U.S.C. § 7114(b)(1), which would make it an unfair practice under 5 U.S.C. § 7116(a)(8). Therefore, the essence of this action is within the coverage of the Act.

■ The Union attempts to invoke the doctrine of futility of exhaustion of administrative remedies, *Bendure v. United States*, 554 F.2d 427, 431 (Ct.Cl.1977), by alleging that the Authority refused to hear its claim. This, however, is not the issue before us. As the appellees have pointed out in correspondence appended to their supplemental reply brief, the Union filed a charge with the Authority's Regional Director on March 11, 1980, which was dismissed pursuant to 5 U.S.C. § 7118(a)(4)(A) as untimely filed. This decision was affirmed by the General Counsel on October 22, 1980. There is no provision in § 7118 for review in the courts of this determination. Similar determinations by the General Counsel for the NLRB are not reviewable. *Vaca v. Sipes*, 386 U.S. 171, 182, 87 S.Ct. 903, 912, 17 L.Ed.2d 842 (1967); *NLRB*

*v. IBEW, Local 357*, 445 F.2d 1015, 1016 (9th Cir. 1971). Given our finding of a parallel purpose behind the Act and the NLRA, the futility doctrine does not apply to the General Counsel's decision not to issue an unfair labor practice complaint when the charge was untimely filed.

■ Finally, the Union's claim that this suit is for enforcement of an arbitration award, which should confer jurisdiction on the district court by analogy to 29 U.S.C. § 185, ignores the fact that Congress did not enact a provision in the Act similar to § 185 and instead vested the Authority with jurisdiction over such suits. 5 U.S.C. §§ 7116(a)(8), 7119(b), (c)(1), 7121(b)(3)(C), 7122(a). Thus, there are no grounds for district court jurisdiction under any exception to the Act.

### III

Since we have found that the Authority has exclusive jurisdiction over federal labor relations, that the General Counsel for the Authority has made a final determination that no complaint will issue, and that the Union falls within no exception to the Authority's exclusive jurisdiction, we vacate the judgment of the district court and remand this case with instructions to dismiss for lack of subject matter jurisdiction. *Liberty Mutual Insurance Co. v. Wetzel,* 424 U.S. 737, 746, 96 S.Ct. 1202, 1207, 47 L.Ed.2d 435 (1976).

VACATED AND REMANDED.