Zaida **HERNANDEZ; Angel L. Figueroa; Mildred Soto; Alejandro Collazo; Alfredo Rosario; Hector L. Pabon; Tania Melendez; John Bernis; Fernando Pagan; Carmelo Vega; Antonio Rivera–Melendez; Maria V. Ortiz–Vega; Juan Maldonado–Carrion; Angel Lopez; Rafael Guevara; Antonio Vera; Hector Martinez; Josefa Barreto; and Virgilio Aviles, Plaintiffs,**

v.

**DEPARTMENT OF the ARMY, Fort Buchanan Community Club; Colonel Montie T.S. Hess, Major Jerome C. Hesby, Lieutenant Colonel (Ret.) Juan G. Robles, and Thomas P. Kulina, Defendants.**

Civil No. 94–1713CCC.

United States District Court,
D. Puerto Rico.

May 29, 1996.

⊕⇒36

Nicolás Delgado–Figueroa, Santurce, PR, for plaintiffs.

Guillermo Gil, U.S. Attorney, Fidel A. Sevillano, Assistant U.S. Attorney, Hato Rey, PR, for defendants.

**OPINION AND ORDER**

CEREZO, Chief Judge.

This case, arising from the dismissal and/or reduced hours of a group of employees, is before this Court on defendant's Motion to Dismiss (docket entry 3), which plaintiffs have opposed (docket entry 7).[1]

Plaintiffs, present and former employees of the Fort Buchanan Community Club, a nonappropriated fund instrumentality ("NAFI") of the United States, allege that defendants committed unlawful employment practices (ULPs) against them. Specifically, plaintiffs allege that defendants refused to bargain with their union, "Congreso de Uniones Industriales de Puerto Rico" ("Union"), denied them their rights under the Union's collective bargaining agreement, and retaliated against them because of their union activities. Plaintiffs further contend that some of them were not properly compensated for the overtime hours that they worked at the Fort Buchanan Community Club. Finally, five plaintiffs claim they were discriminated on the basis of their age, one plaintiff claims she was sexually harassed, and another claims he was discriminated against on the basis of his medical condition.[2]

Plaintiffs assert claims under § 218(b)(2) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 218(b)(2); the Federal Service Labor–Management Relations Statute, (Federal Labor Relations Statute), as amended 5 U.S.C. §§ 7101–7135 (1990), and various Puerto Rico statutes. Plaintiffs have named the United States Department of the Army,

---

1. Notwithstanding the fact that plaintiffs included many exhibits in support of their opposition, because defendants filed documents in support of their motion, we gave plaintiffs an additional opportunity to oppose the motion. They failed to do so. Because of the presence of documents outside the pleadings submitted by both parties which were considered by the court, the motion was treated as one for summary judgment pursuant to Fed.R.Civ.P. 56.

2. The complaints of discrimination raised by these five appear to be made more as further examples of mistreatment, rather than separate

claims. The plaintiffs state in their second opposition to the motion to dismiss that

"[they] are not trying to recover damages for the mentioned civil rights violations committed by the administrative personnel of the Club.... The alleged violations committed are only mentioned to show the labor environment of the Club, that (sic) demonstrate defendants' attitude toward their employees."

Inasmuch as they do not invoke the protection of the Age Discrimination in Employment Act, Title VII, or the Rehabilitation Act, these issues will not be addressed individually.

the Fort Buchanan Community Club ("Fort Buchanan"), Colonel Montie T.S. Hess, Lieutenant Colonel Juan G. Robles, Major Jerome C. Hesby, and Thomas Kulina as defendants. Col. Hess, Ltc. Robles, Maj. Hesby, and Mr. Kulina are being sued only in their official capacities.

· The salient facts are as follows: In July 1988, Fort Buchanan negotiated a Collective Bargaining Agreement (CBA) with the Union. The agreement became effective on August 26, 1988, and was to remain in effect for three years. The CBA allowed either party, prior to its expiration, to notify the other party of its desire to renegotiate the agreement. The CBA further provided that it would remain in effect during renegotiations until a new one was approved, but not longer than 90 days from the expiration date, except upon mutual agreement by the parties. The Union and Fort Buchanan did not make any agreement to continue beyond the 90 days.

On August 3, 1991, Robles became the Deputy Installation Commander of Fort Buchanan. Shortly after his arrival at Fort Buchanan, he learned that the CBA was due to expire and that the parties needed to negotiate a new contract. Thereafter, Fort Buchanan informed the Union that it desired to renegotiate the CBA.

In October 1991, they initiated proposals for negotiations. In December 1991, the Union and Fort Buchanan agreed in writing to the procedures they would use to conduct the negotiations. Fort Buchanan appointed Robles as the chief negotiator for its management negotiating team. Plaintiffs' counsel, Mr. Nicolás Delgado–Figueroa, served as the Union's chief negotiator.

Negotiations were initially scheduled to commence on May 18, 1992. When Fort Buchanan's representatives met with the Union, however, the Union refused to negotiate in English, which was contrary to the previously agreed upon procedures. Consequently, Fort Buchanan suspended negotiations until the Union agreed to negotiate in English and otherwise abide by the previously agreed upon procedures. On October 6,

1992, Fort Buchanan representatives again met with the Union to renegotiate the CBA. Shortly thereafter the Union declared it was at an impasse. Fort Buchanan immediately filed two ULP charges against the Union with the Federal Labor Relations Authority ("FLRA") for failure to bargain in good faith and for failure to represent all employees in the bargaining unit.

On January 14, 1993, the Union and Fort Buchanan resolved the charges by settlement agreement. In the agreement, the Union acknowledged its responsibility to represent the interests of all employees in the bargaining unit, without discrimination. Additionally, the parties agreed they were at impasse and would cooperate using impasse procedures.

Neither party, however, ever elected to use impasse procedures. Nor did the Union ever file a charge of an unfair labor practice with the FLRA alleging that Fort Buchanan, through the defendants named in the complaint, refused to bargain with the Union, violated their rights under the CBA, retaliated against them because of their union activities, or otherwise violated the Federal Labor Relations Statute.

In October, 1992, Fort Buchanan issued letters to twenty-two (22) employees informing them that their positions were being abolished and/or their hours reduced due to business based decisions. Sixteen of those employees are plaintiffs in this suit.[3]

None of these employees, however, elected to grieve these allegedly business based actions under the grievance procedures contained in the NAF Instruction. Instead, the plaintiffs chose to bring their complaints directly to this Court, where they raised all of the claims of the unfair labor practices mentioned above, as well as others, against the defendants in this case.

The Federal Labor Relations Statute, grants the power to prosecute unfair labor practices to the FLRA's General Counsel, not to the charging party. By trying to

---

**3.** Those plaintiffs are Z. Hernández, A. Figueroa, M. Soto, A. Collazo, A. Rosario, H. Pabón, T. Meléndez, J. Bernis, F. Pagán, C. Vega, A. Rivera–Meléndez, M. Ortiz, J. Maldonado–Carrión, R. Guevara, A. Vera, and V. Avilés.

bring their charges directly to district court, plaintiffs are attempting to usurp the prosecutorial role and discretion Congress expressly granted to the General Counsel. Since Congress intended the General Counsel to make unreviewable the determinations about whether to even prosecute a charge, it follows that to allow a charging party to bypass that step, by bringing the case directly to district court, would be wholly counter to the congressionally mandated procedure.

The language of the law and relevant precedent make clear that Congress intended that the FLRA, and not the district courts, adjudicate disputes arising under the Federal Labor Relations Statute, including those dealing with unfair labor practices, as defined in the law itself. *See Montplaisir v. Leighton,* 875 F.2d 1, 3 (1st Cir.1989); *Clark v. Mark,* 590 F.Supp. 1, 8 (N.D.N.Y.1980) (claims which *"are arguable unfair labor practices ...* must be dismissed as pre-empted under [the CSRA]."*) (Emphasis added.)

We are also in agreement with other jurisdictions that have found a lack of independent federal jurisdiction for these claims. *See e.g., Montplaisir,* 875 F.2d at 2–3; *Barnes v. Small,* 840 F.2d 972, 980–81 (D.C.Cir.1988); *Warren v. Local 1759, Am. Federation of Gov't Employees,* 764 F.2d 1395, 1396–97, 1399 (11th Cir.), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 527, 88 L.Ed.2d 459 (1985); *Columbia Power Trades v. U.S. Dept. of Energy,* 671 F.2d 325, 326–27 (9th Cir.1982); *Martel v. Carroll,* 562 F.Supp. 443, 444 (D.Mass.1983).

■ Where statutory procedures are designed to permit agency expertise to be applied to particular problems, and if district court jurisdiction would decrease the effectiveness of the statutory design, the statutory procedures are considered exclusive. *Columbia Power Trades, supra,* 671 F.2d at 326 (citing *Whitney National Bank v. Bank of New Orleans & Trust Co.,* 379 U.S. 411, 420–21, 85 S.Ct. 551, 557, 13 L.Ed.2d 386 (1965).

Clearly, in enacting the Federal Labor Relations Statute, Congress meant the FLRA to apply its special expertise in administering federal sector labor relations. Section 7105(a)(1) of the Federal Labor Relations Statute mandates that "the [FLRA] shall provide leadership in establishing policies and guidance ... and except as otherwise provided, shall be responsible for carrying out the purposes of [the Federal Labor Relations Statute]." As further noted by the Supreme Court, it is the FLRA's "special function [to apply] the general provisions of the [Federal Labor Relations Statute] to the complexities of federal labor relations." *Bureau of Alcohol, Tobacco and Firearms v. FLRA,* 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983).

■ Moreover, the specific judicial review provisions of the Federal Labor Relations Statute clearly indicate that Congress intended no independent federal court jurisdiction over matters arising under the Federal Labor Relations Statute. *NFFE v. Commandant, Defense Language Institute, West Coast Branch,* 493 F.Supp. 675, 679 (N.D.Cal.1980).

The Federal Labor Relations Statute explicitly provides for federal court action in three limited instances. First, judicial review of final orders of the FLRA is available in an appropriate federal circuit court of appeals. 5 U.S.C. § 7121(a). Second, the FLRA may petition an appropriate court of appeals for enforcement of its orders and for appropriate temporary relief. 5 U.S.C. § 7123(b). Finally, upon the issuance of a complaint by its General Counsel, the FLRA may petition a federal district court for temporary relief. 5 U.S.C. § 7123(d).[4] The plaintiffs' claims do not conform with any of the three avenues of redress proscribed by the statute.

---

4. Section 7123(d) provides the only role for federal district courts and, significantly, it provides that only the FLRA may seek relief there. At no point does the Federal Labor Relations Statute entitle an employee, union, or agency to petition a district court for Relief. *Columbia Power Trades, supra,* 671 F.2d at 327. In that regard,

the *Columbia Power Trades* court found it noteworthy that, in enacting the Federal Labor Relations Statute, Congress explicitly considered, but rejected, a provision allowing some right of private access to district courts. 671 F.2d at 327 n. 8.

■ Plaintiffs claim they were either wrongfully discharged or assigned less beneficial positions and ask this Court to address these claims under various Puerto Rico statutes. The Civil Service Reform Act (CSRA) provides the exclusive mechanism for federal employees seeking redress of non-discriminatory personnel actions connected with federal employment. *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). Congress, through passage of the CSRA, provided federal employees with a comprehensive remedial scheme for addressing violations of rights in the federal employment relationship. This comprehensive scheme supersedes any independent judicial remedy. *Id.* at 448–49, 108 S.Ct. at 674.

■ The specific nature of the remedies provided by the CSRA, however, depend on the particular status of the employee and the nature of the personnel action to which the employee has been subjected. Thus, while NAF employees are expressly made subject to Title VII of the CSRA, which governs labor-management relations in the federal sector, *Pérez v. Army and Air Force Exchange Service*, 680 F.2d 779, 788 (D.C.Cir. 1982), they are statutorily excluded from coverage of laws administered by Office of Personnel Management. 5 U.S.C. § 2105(c); *McAuliffe v. Rice*, 966 F.2d 979 (5th Cir. 1992). Where Congress has made NAF employees subject to laws applicable to other employees, it has done so "by expressly including [NAF employees] within the coverage of the specific laws." *Pérez*, 680 F.2d at 787.

■ Thus, the critical issue with regard to plaintiff personnel action claims is whether a NAF employee has a non-statutory right to have an adverse employment action reviewed. More specifically, we must decide if a federal employee, who is not afforded the right to have an adverse action reviewed under the CSRA, has a right to direct recourse in federal district court.

The case of *United States v. Fausto*, 484 U.S. at 439, 108 S.Ct. at 668 (1988), in which

a federal employee claimed his employment was wrongfully terminated, is dispositive of this issue. The employee in *Fausto*, who was in a class excluded from seeking relief under the CSRA's administrative and judicial review sections, filed a lawsuit in federal court asserting his claims. The Supreme Court granted certiorari on the question of whether a federal employee may obtain "judicial review of an adverse personnel action for which the CSRA does not provide him a right of review." *Id.* at 443, 108 S.Ct. at 671. The Court held that there was no right of review for such an employee.[5]

The Supreme Court grounded its holding on a review of the entire statutory scheme. It found Congress' clear intent in excluding certain classes of employees from the CSRA was to stop these employees from seeking review of adverse employment actions. *Id.* at 447, 108 S.Ct. at 673. The Court reasoned that:

> The comprehensive nature of the CSRA, the attention that it gives throughout to the rights of [excluded] employees, and the fact that it does not include them in provisions for administrative and judicial review . . . combine to establish a congressional judgment that those employees should not be able to demand judicial review. . . .

*Id.* at 448, 108 S.Ct. at 674.

The Court further reasoned that a contrary decision would grant excluded employees greater protection than employees covered by the CSRA remedial provisions, because excluded employees could then seek review of any type of employment action in the federal courts—regardless of the gravity of the action. *Id.* at 449–50, 108 S.Ct. at 674–75.

The Fifth Circuit's decision in *McAuliffe v. Rice, supra*, 966 F.2d 979, applying the rationale in *Fausto*, is particularly instructive on this issue. It held that the exclusivity of the procedures set out in the CSRA precluded the plaintiff's resort to relief under the APA. In reaching this conclusion, that Court noted

---

5. The *Fausto* case involved an employee excluded from the administrative and judicial remedial scheme of the CSRA since he was a nonpreference member of the excepted service. The Court

regarded the action taken against the employee as falling within the purview of Chapter 75 of the CSRA.

"it was never the intent of Congress that NAF employees be entitled to the same levels of employment protection as are other federal employees." *Id.* at 980. The court found that the plaintiff did not lack procedural safeguards because she, like the plaintiffs in the instant case, was covered by an agency regulation which promulgated its own elaborate personnel management regulations. *Id.* Third, it further stated that *Fausto* held certain federal employees were foreclosed from obtaining judicial review of personnel actions because Congress, in enacting the CSRA, established a comprehensive remedial scheme which was designed to "balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* (quoting *Fausto,* 484 U.S. at 445, 108 S.Ct. at 672).

The court concluded that the CSRA provided NAF employees their exclusive remedy for federal employment personnel actions. *Id. See also Pérez, supra,* 680 F.2d 779 (holding NAF employees were not employees within the appeal provisions of the Civil Service Reform Act of 1978, and therefore they were not entitled to appeal their terminations to the MSPB).

█ Plaintiffs ask this Court to entertain their claims for overtime pay under the Fair Labor Standards Act (FLSA), 29 USC § 218(b)(2).

In *Carter v. Gibbs,* 909 F.2d 1452 (Fed.Cir. 1990) (en banc), the Court held that the mandatory grievance procedure contained in federal collective bargaining agreements is the exclusive means for resolving FLSA pay disputes, unless the negotiated procedure excludes FLSA claims from its coverage. 5 U.S.C. § 7121(a).

*Carter* and all the cases which have construed it rest upon section 7121(a) of the CSRA, which provides:

(1) Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections (d) and (e) of this section, the procedure shall be the exclusive procedures for resolving grievances which fall within its coverage.

*Carter* relied upon a line of cases which hold that the CSRA comprehensively revised the civil service system and that Congress had decided not to grant to Federal employees access to courts beyond that provided in the CSRA itself. This exclusivity principle is subject to certain exceptions. For example, section 7121(a)(2) of the CSRA also provides that any collective bargaining agreement "may exclude any matter from the application of the grievance procedures...."

In addition, employees with FLSA and other pay claims are not provided with a choice of fora under the statute. *Carter,* 909 F.2d at 1457. Given the fact that FLSA overtime claims are not statutorily excluded as a matter of principle from the grievance procedure, this Court lacks jurisdiction to entertain overtime claims such as those apparently asserted by plaintiffs, since the applicable CBA did not exclude these claims from coverage of the agreement. We, therefore, find that the plaintiffs overtime claims were grievable under Chapter 71 of Title V and under the terms of the CBA.

█ In *Cosme Nieves v. Deshler,* 786 F.2d 445 (1st Cir.1986), the Court of Appeals addressed the issue of whether NAF employees could sue a NAFI for wage and salaries under 29 L.P.R.A. § 271 *et seq.* The plaintiffs in that case sought back pay and damages pursuant to 29 L.P.R.A. § 271 *et seq.* under which they claimed they could sue because these provisions were more favorable to them than the FLSA. The district court, however, dismissed these claims after determining federal employees were excluded from coverage under 29 L.P.R.A. § 271 *et seq.* On appeal, the First Circuit affirmed the district court's holding.

This same analysis applies to the plaintiffs claims under 29 L.P.R.A. § 185a. Moreover, the plaintiffs have not provided any evidence that § 185a applies to them.

For the above stated reasons, the Federal Defendants' Motion to Dismiss is GRANTED and the complaint is DISMISSED.

SO ORDERED.