Fernando BLANCO, et al., Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

No. Civ. 00–2208(SEC).

United States District Court, D. Puerto Rico.

March 18, 2002.

---

Victoria A. Ferrer–Kerber, San Juan, P.R., for plaintiff(s).

Fidel Sevillano–del–Rio, U.S. Attorney's Office District of Puerto Rico, San Juan, P.R., for defendant(s).

## OPINION AND ORDER

CASELLAS, District Judge.

Before the Court are the parties' cross-motions for summary judgment.[1] For the reasons set forth below, the Court finds that it does not have subject matter jurisdiction over this claim, and it will be **DISMISSED**.

### I. Background

Plaintiffs are current and former employees of the Federal Bureau of Prisons Metropolitan Detention Center, in Guaynabo, Puerto Rico ("MDC"). At issue in this case is whether or not they were fully and properly compensated for the entire period of time that they were restricted to the MDC during the time that Hurricane Georges passed over the island of Puerto Rico, in September of 1998. The following factual summary is not disputed by the parties.

During the morning of September 20, 1998, a hurricane warning was issued for the island of Puerto Rico. At approximately 6:00 a.m., on that morning, MDC Warden Ed Gonzalez, opened the institution command center at the facility to monitor the progress of Hurricane Georges. In addition to opening the institution command center, Warden Gonzalez activated the family center at the MDC visiting room. In the family center, off-duty staff and their families were provided shelter from the hurricane. They also had television sets and cots available in the family center. When the Warden opened the command center and family center, Hurricane Georges was located approximately 85 miles from Puerto Rico, and had maximum sustained winds of 110 miles-per-hour.

By 2:00 p.m. the following day, Monday, September 21, 1998, the situation had shown no improvement. As such, at approximately 4:00 p.m., Warden Gonzalez declared an emergency. The staff was

---

1. The parties' summary judgment arguments are set forth in **Docket ##25, 28, 32, 35, 37,** 40.

informed of the state of emergency both orally and by written memo, which stated:

> [d]ue to the emergency situation and the safety of all staff, no one will be allowed to leave the institution until further notice. Hurricane Georges' winds are projected to exceed 110 mph and will reach the island within the next couple of hours. Also, since some staff might not be able to reach the institution due to the above-mentioned situation, it is necessary for all staff to remain at the institution to assist the relieving posts. If you have any questions, please follow your chain of command through your respective Associate Warden.

Pursuant to these orders, staff present at the institution were restricted to the institution for their own safety, and to ensure the continued safe and orderly operation of the institution, in the event that other staff members were unable to reach the premises. Staff and their families were provided with food, and when they were not assigned to work a post, staff were encouraged and expected to sleep in an empty housing unit designated for this purpose. Some of the staff decided to stay in the empty housing unit, others remained with their families in the family center, and the rest of the staff chose to sleep in their particular departments.

Although the memorandum indicated that staff members would be required to assist at the relieving posts during the state of emergency, in reality the need for such assistance never materialized. As such, no staff members reported being called to duty or performing any work during their designated rest period, and the Warden deactivated the command center at approximately 7:00 p.m. on September 22, 1998.

The following day, G. Joseph Kelley Jr., the Human Resources Director of MDC, issued a memorandum to all timekeepers regarding pay for staffers who remained at the institution during Hurricane Georges. In the memorandum, Mr. Kelley explained that for Monday, September 21, 1998, the day the hurricane passed through the island, most staff would be paid for sixteen hours of work (applying overtime, compensatory time, night differential, or any special pay provisions applicable). For staff members to receive pay for more than sixteen hours of work, however, their supervisor would need to certify that they were: (1) instructed to perform work beyond the sixteen hours, and (2) they had in fact performed such work.

The staff members and their union representation were not in agreement with the Department of Human Resources' decision, so on October 13, 1998, the American Federation of Government Employees, Local 4052 Council of Prisons Local ("Union"), submitted a grievance to Robert L. Matthews, the Regional Director for the Southeast Regional Office of the Federal Bureau of Prisons. In its grievance, the Union complained that during the "worst disaster in the last 50 years" they were restricted to MDC Guaynabo and expected to remain in a state of readiness. This, the Union believed, entitled its members to standby pay under 5 C.F.R. § 551.431. Finding that the employees had been properly compensated for the time period in question, the Regional Director denied the grievance.

Not content with the director's decision, and in accordance with the Collective Bargaining Agreement between the Union and the Bureau of Prisons, the staffers submitted the issue to a voluntary binding arbitration proceeding. On June 30, 1999, Arbitrator Mona Miller issued a decision in the matter of the Union's grievance. In her decision, the arbitrator found that:

> Staff who were held in the institution beyond their twelve hour shift were paid for eight hours of regular duty, four

hours of overtime, and four more hours of overtime for what the warden considered as standby time in order to compensate them to the limit allowed by regulation. The record shows the Agency was prepared to compensate the staff who actually worked beyond the sixteen hours. A memo from the Human Resources Manager indicated pay would be given to any staff whose supervisor certified the staff member was "instructed to and actually performed work beyond sixteen hours." The record is devoid of any such requests. Based on the entire record the arbitrator found no violations of the contract regulations, or law.

The Union filed exceptions to the arbitrator's award with the Federal Labor Relations Authority, which were denied.

After exhausting all administrative avenues, on September 19, 2000, Plaintiffs filed the above-captioned suit. Plaintiffs' first cause of action in the amended complaint alleges that Defendants have willfully and purposefully violated the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, by failing to fully and fairly compensate them for the time period involving the passage of Hurricane Georges over the island of Puerto Rico. Plaintiffs' second cause of action alleges that Defendant Office of Personnel Management ("OPM"), by enacting the regulation concerning deductible sleep time, 5 C.F.R. § 551.431, violated the Administrative Procedures Act, 5 U.S.C. § 706(2)(a). Plaintiffs believe that the Office of Personnel Management's regulation concerning deductible sleep time is inconsistent with the Department of Labor regulation on that same issue, 29 C.F.R. § 785.22; and therefore, "not in accordance with the law."

In this Court, unlike the administrative proceedings, where the adequacy of the sleeping conditions and other factual matters were mainly at issue, Plaintiffs are challenging the validity of the agency regulations, which they believe unlawfully deprived them of wages owed. Plaintiffs' legal theory can be characterized as follows. The Bureau of Prisons deducted eight hours of sleep time from each of the Plaintiffs' pay for the period of September 21 until September 22, 1998, when the Plaintiffs remained on the premises of MDC Guaynabo because of Hurricane Georges. In support of its denial of Plaintiffs' wages, the Bureau of Prisons cited a regulation issued by the Office of Personnel Management, 5 C.F.R. § 551.432, which states:

(a) Except as provided in paragraph (b) of this section, bona fide sleep time that fulfills the following conditions shall not be considered hours of work if:

(1) The work shift is 24 hours or more;

(2) During such time there are adequate facilities such that an employee may usually enjoy an uninterrupted period of sleep; and

(3) There are at least 5 hours available for such time during the sleep period.

(b) For employees engaged in law enforcement or fire protection activities who receive annual premium pay under 5 U.S.C. 5545(c)(1) or (2), the requirements of paragraph (a) of this section apply, except that on-duty sleep time may be excluded from hours of work only if the work shift is more than 24 hours.

(c) The total amount of bona fide sleep and meal time that may be excluded from hours of work may not exceed 8 hours in a 24–hour period.

(d) If sleep time is interrupted by a call to duty, the time spent on duty is considered hours of work.

(e) On-duty sleep and meal time during regularly scheduled hours for which standby duty premium pay under 5

U.S.C. 5545(c)(1) is payable may not be excluded from hours of work.

(f) For firefighters compensated under 5 U.S.C. 5545b, on-duty sleep and meal time may not be excluded from hours of work.

Plaintiffs take exception to the cited regulation, and contend that, pursuant to the decision of *AFGE v. OPM*, 821 F.2d 761 (D.C.Cir.1987), the OPM regulation must be applied consistently with the analogous Department of Labor ("DOL") regulation, which requires that in order for sleep time to be deducted from employee's pay, there must be an express or implied agreement with the employees that this can be done. The DOL regulation to which Plaintiffs refer is codified at 29 C.F.R. § 785.22, and states:

> (a) General. Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked (citations omitted).
>
> (b) Interruptions of sleep. If the sleeping period is interrupted by a call to duty, the interruption must be counted as hours worked. If the period is interrupted to such an extent that the employee cannot get a reasonable night's sleep, the entire period must be counted. For enforcement purposes, the Divisions have adopted the rule that if the employee cannot get at least 5 hours' sleep during the scheduled period the entire time is working time (citation omitted).

Plaintiffs assert that since there was no express or implied agreement that sleep time could be deducted from their pay, as provided for in the DOL regulation, the BOP did not have the authority to deduct the eight hours of wages from the time period they were allotted to sleep. Plaintiffs seek back pay and liquidated damages, as well as a declaration that the OPM regulation concerning sleep time is contrary to the law because of its inconsistency with the DOL regulation.

After digesting the allegations made in the amended complaint, on July 11, 2001, Defendants filed a consolidated motion to dismiss and for summary judgment. In the motion, Defendants make the following arguments: (1) undisputed facts demonstrate that Defendants are entitled to judgment as a matter of law; (2) the Court lacks jurisdiction over the second count of the amended complaint because the statute of limitations for a facial challenge to the OPM's regulation has elapsed; and (3) the challenged OPM regulation is not arbitrary, capricious, or otherwise contrary to the law. (**Docket # 25**). Plaintiffs have filed an opposition to Defendants' motion and a cross-motion for summary judgment, where they argue that: (1) the challenge to the validity of the OPM regulation is not time-barred; and (2) the OPM regulation is inconsistent with the DOL regulation, and is thus, contrary to the law. (**Docket # 28**). In addition to their legal arguments, the parties also discuss and disagree on the amount of deference this Court owes to the arbitrator's decision, and it is with the effect of this arbitration award that the Court will begin its analysis.

## II. The Court's Jurisdiction Over Plaintiffs' Cause of Action

After summarizing the parties' arguments concerning the validity of the regulations, the fundamental question, and ulti-

mate issue in this suit is whether Plaintiffs are entitled to overtime pay under the Fair Labor Standards Act. Plaintiffs' argument can be summarized as follows: (1) Plaintiffs feel that they are entitled to pay under the FLSA for the "sleep time" they were not compensated for during Hurricane Georges; (2) Plaintiffs filed a grievance with Regional Director for the Southeast Regional Office of the Federal Bureau of Prisons, in which they sought pay under 5 CFR § 551.431, the OPM's regulation for implementing the FLSA for federal employees; (3) Plaintiffs' grievance, and thus their cause of action under the FLSA was denied; (4) In accordance with the procedures established in the Collective Bargaining Agreement between the Union and the Bureau of Prisons, the staffers submitted the matter to voluntary binding arbitration; (5) the arbitrator found in favor of the Bureau of Prisons and denied Plaintiffs' claim for payment under the provisions of the FLSA, through an interpretation of the OPM's overtime pay provisions; (6) the Union filed exceptions to the arbitrator's award with the Federal Labor Relations Authority, which were denied; (7) Plaintiffs filed the instant case seeking to first invalidate the OPM's regulation; and (8) Plaintiffs also seek payment for the overtime pay denied to them under the provisions of the FLSA.

The problem with Plaintiffs' case is that they are "bootstrapping" the FLSA claim to the regulatory challenge under the APA. We will explain. Plaintiffs' ultimate goal is to be paid for the overtime sleep period they believe they were wrongfully denied. Their theory rests on first invalidating the regulation, which the administrative agency used to deny them compensation. If this occurs, then Plaintiffs believe that the more favorable DOL regulation concerning deductible sleep time would apply to their situation. If the DOL regulation applies, Plaintiffs argue that they would then have a viable FLSA claim, and thus be entitled to receive the overtime compensation. The problem with Plaintiffs' argument is that they have already lost twice on the FLSA claim in the administrative proceedings. Therefore, the question becomes: what is the effect of arbitrator's denial of Plaintiffs' FLSA claim?

Plaintiffs believe that this Court should not give the arbitrator's decision any deference, and that they are entitled to a *de novo* review of the FLSA claim. Defendants claim that the Court should give the decision a great deal of deference, and that Plaintiffs are entitled to a limited review of the arbitrator's decision on the FLSA claim. After researching the issue, the Court finds that the arbitrator's decision is not only binding on the parties, but it also divests the Court of subject matter jurisdiction over the FLSA claim. Therefore, we must dismiss the FLSA claim. In turn, any substantive ruling on the APA regulatory challenge would have no meaning between these litigants, and would serve only as a prohibited advisory opinion.

We begin our analysis with the Collective Bargaining Agreement between the Federal Bureau of Prisons and the Council of Prisons Locals, American Federation of Government Employees. (Docket # 28, ex. 2). The term set forth on the cover of the agreement is from March 9, 1998 until March 8, 2001. The agreement commences with a recognition, which states in Section b:

> The Employer recognizes the Union as the exclusive bargaining agent under the provisions of the Federal Service Labor Management Relations Statute, 5 USC § 7101, *et seq.*, hereinafter referred to as "the Statute," and the Civil Service Reform Act of 1978, of all of the employees in the unit, as the recognized Union for bargaining purposes with respect to con-

ditions of employment of employees represented by the Union. The Union has the full authority as provided by Statute to meet and confer with the Agency for the purpose of entering into negotiated agreements, concerning changes in conditions of employment covering bargaining unit employees, and to administer this Collective Bargaining Unit.

(Docket # 28, ex. 2 at 2).

Having established that the Plaintiffs here were federal employees covered by the terms of a Collective Bargaining Agreement, and that one of the terms was that the Civil Service Reform Act of 1978 ("CSRA") applied to the parties' bargaining relationship, we will now examine our jurisdiction by surveying case law in similar contexts. We begin with the case of *Carter v. Gibbs*, 909 F.2d 1452 (Fed.Cir. 1990). In *Carter*, a group of unionized employees brought an action under the Fair Labor Standards Act for recovery of overtime pay. The government moved to dismiss plaintiffs' FLSA claims by arguing that the CSRA provided an exclusive avenue of dispute resolution for federal employees covered by the terms of a bargaining agreement, and that the terms of the agreement did not exempt any FLSA claim. *Id.* at 1454. Plaintiffs argued that an interpretation of the CSRA in that manner would impermissibly repeal by implication their right to initiate a cause of action under the FLSA in federal district court. *Id.*

The court began its discussion by setting forth three items that were critical to its analysis, and not disputed between the parties. First, the court noted that the CSRA is unambiguous: "the procedures [set out in the collective bargaining agreement] shall be the exclusive procedures for resolving the grievances which fall within its coverage." *Id.* (citation omitted). Second, the court found that "overtime claims, premised on an alleged violation of section 7 of the FLSA, 29 U.S.C. § 207, are 'grievances' subject to the negotiated procedures." *Id.* (citation omitted). Finally, the court noted that "the collective bargaining agreement does not exclude these claims from its grievance procedure pursuant to section 7121(a)." *Id.*

Plaintiffs in *Carter* argued that a judicial cause of action must exist because the grievance procedure in the agreement is inferior to, and its rights and remedies do not compare with those embodied in the judicial alternative. *Id.* at 1457. In support of the inferiority argument, plaintiffs, like the Plaintiffs in this case, cited the case of *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981). However, the court distinguished the *Barrentine* decision (which dealt with private sector employees' rights to seek a judicial forum to raise their claims), from the situation in *Carter*, (which concerned federal employees' rights), as follows: "[i]n the public sector, however, it is manifest that Congress intended arbitrators to develop the expertise requisite to the construction and application of federal labor laws." *Id.* The court continued, "union involvement in the process is in theory if not always in practice a benefit to members rather than a detriment. In any event, it is part of the collective bargain; if the union is derelict in its duties, members have other statutory recourse." *Id.* (citations omitted).

Regarding the argument concerning the remedies available in the administrative fora, the court held:

[t]o be sure, Congress has extended the rights and remedies of the FLSA to federal employees. But the CRSA requires that federal employees subject to a collective bargaining agreement negotiate with their employing department or agency whether to preserve the FLSA remedy, or instead to commend

FLSA claims to the bargained grievance procedures. By accepting a position covered by the collective bargaining agreement, appellants effectively chose the procedures negotiated by the union. They cannot now assail the sufficiency of those procedures, and we decline their invitation to meddle with the civil service system.

*Id.* at 1458.

In our circuit, the appeals court has not directly dealt with this issue. However, in the case of *Abbott v. United States,* 144 F.3d 1 (1st Cir.1998), federal employees filed suit against the union, for breach of fair representation; and against the United States, for a claim of overtime compensation under the FLSA. Although the court did not rule on the merits of plaintiffs' FLSA claim against the U.S., in a footnote the court hinted that it would not have jurisdiction to do so, as follows:

The sort of claims asserted by the plaintiffs against the government may also be precluded by the CSRA. *See O'Connell,* 22 F.3d 463; *Carter,* 909 F.2d 1452. Indeed, the situation of these plaintiffs is very similar to that of the Albrecht appellants in *Muniz v. United States,* 972 F.2d 1304, 1314–18 (Fed.Cir. 1992). In *Muniz,* the court held broadly that: "Claims arising under collective bargaining agreements must be excluded from mandatory exclusive grievance and arbitration procedures in order for the courts to have jurisdiction to hear such claims." *Id.* at 1316. "Furthermore," the court said, "such an exclusion must be explicit and unambiguous." *Id.* If a collective bargaining agreement excludes FLSA claims from its scope, then the CSRA proceedings do not apply. In such circumstances, plaintiffs would have to file any action within the statute of limitations.

In this case, FLSA claims are not explicitly and unambiguously excluded from the grievance process established by the collective bargaining agreement. Indeed, as the arbitrator of the grievance between the union and the Shipyard found, "an arbitrator's authority to resolve FLSA determination disputes under the terms of the Collective Bargaining Agreement is clear and beyond dispute." Neither party has briefed these issues to the court and we see no reason to extend this case further in order to obtain such briefing. Accordingly, we also do not discuss whether the "exclusive procedures" provisions of the CSRA raise issues under Fed.R.Civ.P. 12(b)(1) or Fed.R.Civ.P. 12(b)(6). Compare *Montplaisir,* 875 F.2d 1, with *Roth,* 952 F.2d 611.

*Id.* at 6 n. 4.

This issue has also been decided in this district. In the case of *Hernandez v. Department of the Army,* 927 F.Supp. 570, 575 (D.P.R.1996), plaintiffs, who were current and former employees of the army, asked the Court to entertain their claims for overtime pay under the FLSA. In holding that there was no jurisdiction, Chief Judge Cerezo held that "[g]iven the fact that FLSA overtime claims are not statutorily excluded as a matter of principle from the grievance procedure," and that they were not excluded by the terms of the agreement between the parties, "this Court lacks jurisdiction to entertain overtime claims such as those apparently asserted by plaintiffs." *Id.*

In the case at bar, we reach an identical holding. First, it is not disputed that the collective bargaining agreement was in effect when the facts giving rise to this litigation occurred. Second, the agreement clearly states that the Civil Service Reform Act applies to the agreement. Third, the agreement does not exclude FLSA claims from the grievance and arbitration process. Fourth, the Plaintiffs

raised the FLSA claim for overtime pay in the form of a grievance, at an arbitration hearing, and exceptions to the arbitrator's decision. Fifth, the arbitrator clearly considered Plaintiffs' claim as one for overtime pay under the FLSA. As such, we hold that Plaintiffs' only fora to bring the FLSA claim, by the terms set forth in the collective bargaining agreement, was in the arbitration and grievance processes, and therefore, this Court is without jurisdiction to consider the claim.

### Conclusion

For the reasons set forth in this Opinion and Order, the Court finds that it does not have subject matter jurisdiction over Plaintiffs' Fair Labor Standards Act Claims. Therefore, the FLSA count is **DISMISSED with PREJUDICE.** Moreover, because we have no jurisdiction over that claim, we cannot reach the administrative count under the APA, and it is also **DISMISSED.** Judgment will be entered accordingly.

**SO ORDERED.**